## Claude CASTLEBERRY

v.

## Bob LANGFORD, Individually, et al.

### No. CA 3–74–1025–C.

United States District Court,
N. D. Texas,
Dallas Division.

March 28, 1977.

Jenks Garrett, Foster & Garrett, Arlington, Tex., for plaintiff.

Jerry D. Brownlow, R. Clayton Hutchins, City Atty., Grand Prairie, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiff Claude Castleberry, a firefighter employed by the City of Grand Prairie, Texas, filed this action on October 18, 1974, seeking declaratory, compensatory, and injunctive relief alleging, first, that his four-month suspension from duty violated his First and Fourteenth Amendment rights of speech and association, actionable under 42 U.S.C. 1983 and, second, that Defendants' refusal to deal with him as a representative of other firefighters constitutes a conspiracy to deprive him of First and Fourteenth Amendment rights, actionable under 42 U.S.C. 1985. Defendants are the city Fire

Chief, Director of Public Safety, Director of the Civil Service Commission, both individually and in their official capacities, and the City Manager in his official capacity. After trial to the court, it is ADJUDGED that Plaintiff has carried his burden of proof as to his § 1983 claim and is, therefore, entitled to compensation for lost wages and other benefits but that his claims for punitive damages, attorneys' fees, and injunctive relief should be denied.

## I.

## PLAINTIFF'S CLAIM UNDER 42 U.S.C. 1983

■ Plaintiff Castleberry was a veteran firefighter when Firefighters Association Local 2096, AFL–CIO was formed in Grand Prairie and Castleberry was elected to serve as its first president. Although Texas law prohibits public employees from claiming a right to strike (Article 1269m, Sec. 27, V.A.T.S.), the enactment in 1973 of the Fire and Police Employees Relations Act (Article 5154c–1, V.A.T.S.) modified prior policy against collective bargaining making collective bargaining a matter of local option. In accordance with state law, Firefighters Association Local 2096 sought to secure the right to bargain collectively with the City of Grand Prairie but the voters of the city refused to adopt the provisions of the new act for their firefighters. It was in this setting as the president of an employee association without the right to strike or collectively bargain that Plaintiff Castleberry incurred the wrath of city officials. His activities as president of the association culminated in his indefinite suspension by the Fire Chief on September 6, 1974. After a hearing on this indefinite suspension, the Grand Prairie Civil Service Commission ordered that the suspension be revised to permit Plaintiff's reinstatement 90 days from the date of the Commission's order.

By way of introduction, it is important to note that the City of Grand Prairie is blessed with a friendly small town atmosphere where the emphasis is on informality and cordiality. Evidence presented at trial points up the unstructured manner in which city employees and officials dealt with one another during the period in question. This fact is highly material to several of the violations with which Plaintiff was charged in the Fire Chief's September 6, 1974, letter of suspension.

Texas law requires that any firefighter suspended from employment must be advised in writing of the reasons for his suspension and such reasons must be limited to events which have occurred within the past six months (Article 1269m, Sec. 16, V.A.T.S.). The grounds upon which a fireman may be suspended are set forth at Article 1269m, Sec. 5 and include: "discourtesy by said employee to the public or to fellow employees while said employee is in line of duty," "conduct prejudicial to good order," and "violation of any of the rules and regulations of the Fire Department . . . or of special orders." Although these and other grounds for suspension relate almost exclusively to conduct while on duty, it is undisputed in this case that Plaintiff Castleberry's performance of his official duties as a firefighter was satisfactory. In fact, for the employee evaluation period from March 1, 1974 to August 31, 1974, Plaintiff was assigned a score of 92 out of a possible 100 points which placed him in a category designated as follows: "Stands Out as Clearly Superior Compared to the General Run of Employees." The charges made against Plaintiff in his suspension letter, and the charges reviewed by the City Civil Service Commission, all involve what might be described as "extra-curricular" activities. More specifically, all of the charges against Plaintiff relate to statements he made and the circumstances under which they were made.

The letter of suspension borders on a shotgun blast against Plaintiff in that it cites numerous instances in which Plaintiff is claimed to have violated several different rules without making it entirely clear which acts are alleged to have violated which rules. The general charge is "systematic disregard" of grievance procedures. Basically, the Fire Chief complains of four ma-

jor incidents or categories of behavior considered to be improper.

First, Plaintiff frequently attended meetings of the Civil Service Commission in an effort to represent the interests of firemen. His statements at three meetings (March 7, April 4, and May 2, 1974) are specifically cited in the suspension letter. The Fire Chief apparently objects to these statements before the Commission on three grounds: (a) that Plaintiff had no right to speak at all on any matter involving other individual firefighters; (b) that Plaintiff was not on the formal meeting agenda and, therefore, interrupted the meetings by asking to be recognized and by speaking out on behalf of other firefighters; and (c) that Plaintiff during the March 7, 1974, meeting conducted himself in an insubordinate manner.

For reasons that will be set forth in part II of this opinion, we believe as to (a) that Plaintiff was within his rights under Texas law in representing other firefighters to present grievances against the City.

With respect to objection (b), it was only at the March 7, 1974, Commission meeting that the subject which Plaintiff endeavored to discuss was not on the formal agenda. At the other meetings, the topic Plaintiff addressed was on the agenda even though he had not been listed as one of those to speak on the issue. While the Texas public meeting law does require an agenda to be published in advance of public meetings (Article 6252–17, Sec. 3A(a)), there is no requirement that the agenda list the names of those individuals who are to address the issues. Further, in all three instances, the very relaxed and informal manner in which the meetings were conducted would not have suggested to a reasonable man that there was an agenda requirement or that it was being enforced. In each instance, Plaintiff was in fact recognized and permitted to begin to speak before being advised that he was out of order. There is no evidence to substantiate that this represented any really significant interference with the meetings in question. To the extent that Plaintiff's statements may have inter-rupted the meetings, such interruptions could have been avoided had the Commission firmly administered its own rules of procedure. It is not contended that Plaintiff had no right to attend the meetings of the Commission.

Regarding objection (c), Plaintiff did act in a disrespectful manner during the March 7, 1974, meeting when he told one Commissioner that he should not "run off at the mouth" about disciplinary action taken against another firefighter. Such a statement, of course, does not reflect good manners or good judgment, but the entire incident arose from the failure of the Commission to insist upon adherence to its own rules. Further, Plaintiff was not on duty at the time as would appear to be contemplated under Rule 57 which reads as follows:

"Rule 57. 'Officers (respect)—Members of this Department shall accord due respect and attention to all officers or any public official visiting the Fire Department.' "

It is undisputed that Plaintiff received no warning, reprimand or suspension for his activities at the Commission meetings. Instead, it was more than four months after the last meeting complained of (and only one day less than six months after the March 7 meeting) that Plaintiff was advised, in his suspension letter, that his statements at the March 7, April 4, and May 2, 1974, meetings were considered to be disrespectful and prejudicial to good order.

Second, the Fire Chief's letter of suspension to Plaintiff charges that Castleberry violated the "chain of command," set forth in Fire Department and City rules and regulations governing the processing of grievances, by taking complaints directly to the City Manager and by asking to be placed on the agenda of the City Council. At trial, however, the City Manager testified that he follows an "open door" policy by which city employees are free to come to him at any time with their problems. One City Councilman also maintained a relationship with Plaintiff that we find to have constituted

an "open door" policy. Plaintiff's request to be placed on the Council meeting agenda appears to relate to this relationship. It is not claimed that Plaintiff interrupted the City Council at any time.

On the question of failure to follow "the chain of command" which appears in various forms in the charges against Plaintiff, a very similar question was involved in the case of *Jannetta v. Cole*, 493 F.2d 1334 (4th Cir., 1974), where a firefighter employed by the City of Rock Hill, South Carolina, was suspended for submitting a grievance petition directly to the City Manager in violation of that City's "chain of command" rule. As Chief Judge Haynsworth said in that case at page 1337:

> " . . . nowhere was it suggested that such a by-pass [of the written 'chain of command'] would result in dismissal. Furthermore, the district court found that the city manager's announced 'open door' policy amounted to an alternate procedure open to city employees to present grievances to city officials. The district court thus held that while the grievance procedure outlined in the employees' handbook (Chain of Command) on its face was properly narrow and adequate, its application in this case, where one, simultaneously with the submission of his petition in compliance with the handbook procedure, also submitted his petition to the city manager in compliance with a parallel but less formal 'grievance procedure,' was overbroad and infringed upon a constitutionally protected freedom."

In applying the *Jannetta* holding to the complaints against Plaintiff, the "open door" policy of the Grand Prairie City Manager constituted an informal alternative to the written "chain of command." It cannot properly be claimed, therefore, that, in following that informal procedure, Plaintiff violated the written procedure. Similarly, to the extent that the complaint regarding Plaintiff's appearances before the Civil Service Commission is grounded on failure to follow "chain of command," the failure of the Commission to enforce its procedural requirements created something analogous to an "open door" policy. Finally, the evidence was that the written "chain of command" was routinely ignored both by employees and supervisors and that no employee of the City had ever been disciplined in any way for failure to follow the "chain of command." While there appears to be no question that a city may establish a "chain of command" requirement for processing grievances, city officials may not properly establish an alternative informal procedure and then enforce the written procedure only against selected employees.

The third basis for discharge claims that Plaintiff had on numerous occasions represented to the news media real or imaginary complaints against the city and city officials instead of processing such complaints through the "chain of command." The only statement made by Plaintiff developed at trial, however, involves that which appeared in the *Grand Prairie News* of March 14, 1974, about five and one-half months prior to Plaintiff's suspension. The newspaper article, entitled, "Fireman Asks Investigation," primarily involved charges of misuse of city equipment reported by another firefighter, one Gary Jones. The last two paragraphs of that article refer to Plaintiff Castleberry and state that he had "some knowledge of incidents on which Jones bases his [charges]." Plaintiff is quoted as saying, " 'There [sic] are in the fire department,' said Castleberry, 'and there is misuse of equipment.' "

The Fire Chief does not claim that Plaintiff has no right to freedom of speech. Rather, he asserts that such statements as would offend the standard laid down in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), that is, statements known to be false or made with reckless disregard for the truth, are a proper basis for suspension. Accepting for purposes of argument that this is the proper test, we must look at the statement made by Plaintiff.

The statement was made in response to a question by a newspaper reporter who telephoned Plaintiff to elicit his comments on

the charges made by Gary Jones regarding misuse of city equipment. The day after the newspaper article appeared, Director of Public Safety Conover interviewed Plaintiff regarding his charge, at which time Plaintiff cited eight specific instances in which he felt equipment had been misused. It is now the Fire Chief's position that because an investigation revealed that only one of the eight allegations made by Plaintiff was found to have any merit, Plaintiff's earlier statement to the press was recklessly or maliciously made. Upon a review of the matter, however, the facts alleged by Plaintiff with respect to five of the eight incidents (# 1 through # 5) were substantially accurate. It is true that in four of the five cases, the incidents were satisfactorily explained, but the bare facts would have justified a reasonable man in believing that there had been misuse of equipment. It is not charged that Plaintiff has made any further accusations regarding misuse of equipment and Plaintiff was not reprimanded or otherwise disciplined for his statements until almost five and one-half months later when this incident was cited in the suspension letter.

The fourth basis for suspension charged is that Plaintiff, while on duty on August 16, 1974, telephoned a City Councilman regarding a proposal to establish a new firefighter classification for drivers and in the course of that conversation threatened that Plaintiff and his association would work for the defeat of Councilmen who did not support firefighters. Plaintiff also indicated that he would work for resubmission of the collective bargaining issue to the voters of Grand Prairie. This charge is substantially accurate and is alleged to be in violation of Texas law prohibiting firefighters from taking an "active part in any political campaign . . . [while] on active duty." (Article 1269m, Sec. 22). The statute goes on, however, to define "active part" as "making political speeches, passing out cards, or other political literature, writing letters, signing petitions, actively or openly soliciting votes and making public derogatory remarks about candidates for such elective positions."

We are unable to see how this ban against political activity while on duty, as defined by Article 1269m, Sec. 22, can be stretched to encompass a telephone call to a city councilman. As for Plaintiff's threat to work for the defeat of councilmen unfavorable to positions of the firefighters association and the threat to resubmit the collective bargaining issue, Plaintiff was only threatening to do that which he had every right to do under Texas law. It is not contended that Plaintiff threatened to carry out his campaigns for the defeat of uncooperative councilmen and for collective bargaining while on duty or in uniform.

The Fire Chief also charges that the contact with the Councilman violated the "chain of command." In this connection, the Fire Chief cited a July 9, 1974, memorandum from the City Council to city employees which purports to resurrect the "chain of command" by requiring that employment grievances be processed through the "line of authority." The Councilman who was telephoned by Plaintiff, however, had for some period of time been dealing with Plaintiff regarding matters of mutual interest to the City Council and the firefighters. On one occasion, the Councilman invited Plaintiff to lunch; on another occasion, he invited Plaintiff to come by his office in the evening to discuss the driver classification matter. Only a day or so before the August 16, 1974, telephone call, Plaintiff and the Councilman had discussed the driver classification question, at which time the Councilman told Plaintiff that he would be in touch with Plaintiff after the Council completed its budget hearings. It was the morning of August 16, 1974, after the hearings, that Plaintiff, learning that no driver classification had been approved, telephoned the Councilman. Under these circumstances, therefore, Plaintiff's telephone call to the Councilman was in compliance with their informal working relationship and cannot properly be a subject for suspension based on "chain of command." Plaintiff was again simply following the informal rather than the written procedure.

At trial, there were references to statements of a disrespectful nature that Plaintiff had made about the Fire Chief. The evidence indicates, however, that such statements were made in private conversations when Plaintiff was endeavoring to present grievances on behalf of association members. There is no allegation of any statement similar to that cited in *Kannisto v. City and County of San Francisco*, 541 F.2d 841 (9th Cir. 1976) where a police officer made disrespectful and disparaging remarks about a superior officer during a morning inspection. Rather, Plaintiff Castleberry apparently made his remarks during private meetings. There is no claim that Plaintiff at any time refused to obey orders or even that he was disrespectful or insubordinate while going about his duties as a firefighter.

All of the evidence tends to indicate that the Fire Chief was the official responsible for the suspension of Plaintiff. The other Defendants were not directly involved in the decision.

## II.

### PLAINTIFF'S CLAIM UNDER 42 U.S.C. 1985

Plaintiff also asserts that Defendants conspired to deprive him of his civil rights by refusing to deal with him as the representative of the firefighters association. The facts on this point are undisputed as all Defendants testified that it was their policy to deal with Plaintiff only as an individual and to refuse to allow him to present grievances on behalf of other firefighters. They further testified as to their belief that such policy was required as a result of the electorate's rejection of the collective bargaining issue. Apparently, they feel that there is no difference between the passive duty involved in hearing grievances presented by a union representative and the affirmative duty under collective bargaining to enter into active negotiations in good faith to reach a binding bilateral agreement as to wages, hours and working conditions.

It is not necessary to decide whether public employees without the right to collectively bargain under state law have a Federal constitutional right to present grievances through a union representative since it seems clear that there is such a right under state law.

Texas law has since 1947 provided as follows:

"The provisions of this Act shall not impair the existing right of public employees to present grievances concerning their wages, hours of work, or conditions of work individually or through a representative that does not claim the right to strike."

Article 5154c, Sec. 6.

The Texas Court of Civil Appeals in El Paso made it clear that this provision gives public employees a right to present grievances through a labor union representative and answered as follows the challenge of the City of Dallas that such an interpretation was inconsistent with those provisions of the act which declare collective bargaining for public employees to be against public policy:

". . . because it [the 1947 statute] permits public employees to present grievances individually or through a representative, the statute does not contradict itself . . . The presentation of a grievance is in effect a unilateral procedure, whereas a contract or agreement resulting from collective bargaining must of necessity be a bilateral procedure culminating in a meeting of the minds involved and binding the parties to the agreement. The presentation of a grievance is simply what the words imply, and no more . . ."

*Beverly v. City of Dallas*, 292 S.W.2d 172, 176 (CCA, El Paso, 1956).

It is apparently the position of the Defendants that the enactment of the Police and Fire Employees Relations Act of 1973 (Article 5154c–1) which permits collective bargaining for policemen and firefighters on a local option basis, repealed Article 5154c so that policemen and firefighters in cities rejecting collective bargaining have

fewer rights than they did under the 1947 statute which had declared collective bargaining to be against public policy. Certainly, the 1973 Act does not expressly repeal the 1947 Act, and it is difficult to believe that the Texas Legislature, in enacting a statute to give collective bargaining rights to firefighters in cities adopting the act, meant to restrict firefighters in nonadopting cities to fewer rights than they had under the broader 1947 statute.

To the extent that Defendants refused to deal with Plaintiff as a representative of other members of his firefighters union, therefore, they were violating his rights and the rights of other firefighters under Texas law. Because this court is convinced that the Defendants will modify their policy upon being referred to the above-cited authorities, there is no necessity of an injunction and no reason to reach the Federal constitutional question raised by the § 1985 claim. If we are mistaken in our belief that Defendants will expeditiously move to comply with state law, Plaintiff has standing as a member of the firefighters union to re-open this case so that the Federal constitutional question can be reached and the § 1985 claim decided.

### III.

### CONCLUSIONS

Although it is not claimed that Plaintiff has any "right" to public employment, it seems clear that a public employee may not be discharged if the reasons therefor are violative of Federal constitutional rights, *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972). It is also settled in this Circuit that the First and Fourteenth Amendment right of association protects the right of public employees to join a union and that a § 1983 action is a proper vehicle for the vindication of such right, *Orr v. Thorpe*, 427 F.2d 1129 (5th Cir. 1970). Cases upholding the free speech rights of public employees are even more abundant; see, for example, *Pickering v. Board of Education*, 391 U.S. 563, 81 S.Ct. 1731, 20 L.Ed.2d 811 (1968). While most speech-public employee cases involve teachers, we are persuaded that firefighters also retain substantial free speech rights while on the public payroll; the Defendants here agree.

Upon a review of all the facts in this case, we find from a preponderance of the evidence that the Fire Chief suspended Plaintiff in an attempt to effectively deprive him of his speech and associational rights. While we are persuaded that the Fire Chief believed he was acting in accordance with state law, we do not believe that a "good faith" defense is available against claimed deprivations of such long established and generally recognized rights as speech and association, *Jannetta v. Cole*, supra.

Several factors support the conclusion that Plaintiff was discharged for exercise of his speech and associational rights. First, for the reasons set forth in part I of this opinion, we do not believe that the Fire Chief's suspension of Plaintiff was based on legally sufficient reasons under state law. We do not question the power of the state, the city, or the fire department to establish and enforce rules and regulations governing presentation of employee grievances, but the fact remains that those regulations which Plaintiff is claimed to have violated were almost universally ignored by officers and employees alike.

Second, it seems significant that the Fire Chief consistently failed to warn or discipline Plaintiff. While we do not maintain that Plaintiff has any "right" to be promptly warned or disciplined when his acts are felt to transgress applicable rules, it would seem in the normal course of business that a supervisor would promptly advise a subordinate of what the supervisor feels to be rule violations. Where, as here, he fails to do so but instead accumulates every questionable incident for a period of months and then moves to suspend the employee indefinitely, we feel that there is reason to suspect that the real motivation is something other than the specific incidents cited.

Third, it is worthy of note that the Civil Service Commission rejected the recommendation of the Fire Chief, who had suspended

Plaintiff indefinitely, and ordered his reinstatement after 90 days. Apparently, the Commission did not feel that the acts complained of justified indefinite suspension even though three of the incidents occurred at Commission meetings and even though one or more of the Commissioners were the targets of Plaintiff's sometimes intemperate remarks.

Fourth, the City did, in 1975, substantially revise the employee grievance procedure. It will be recalled that the general charge against Plaintiff was "systematic disregard" of the grievance procedure, and the fact that this procedure was amended within months after Plaintiff's discharge indicates that city officials recognized that the procedure was deficient.

Finally, shortly after being re-instated, Plaintiff received a written order from the Fire Chief, on April 7, 1975, requiring Plaintiff to answer eight questions about newspaper articles quoting Plaintiff that appeared in the Grand Prairie News of April 2 and April 6, 1975; failure to respond to the order in writing would have subjected Plaintiff to suspension. While we do not here consider the propriety of this order, the fact that it was issued lends further support to our finding that Plaintiff's exercise of speech and associational rights were the real basis of his suspension in 1974.

With respect to damages, Plaintiff is entitled to recover from the Fire Chief the value of lost wages and benefits, less taxes saved and any increased income from other employment attributable to having been suspended for four months. Plaintiff is also entitled to restoration of seniority. As for the plea for punitive damages, the rule in this Circuit was set forth in Lee v. Southern Home Sites Corporation, 429 F.2d 290 (5th Cir. 1970) at page 294:

"The general rule as to punitive damages, repeatedly found in the reported cases, is that they may be imposed if a defendant has acted wilfully and in gross disregard for the rights of the complaining party . . . they are not a favorite in law and are to be allowed only with caution and within narrow limits."

As previously intimated, we are persuaded that the Fire Chief did not act "wilfully" in taking the action he did. Further, we are not persuaded that punitive damages are necessary to remedy the deprivations of which Plaintiff complains.

Plaintiff also seeks attorneys' fees. Again, Lee v. Southern Homes Sites Corporation, supra, provides guidance as that court observed, at page 295:

". . . the allowance of attorneys' fees and expenses in preparation for trial is in the discretion of the district court sitting in equity where exceptional circumstances call for their allowance in order to do justice between the parties . . ." [Emphasis in original.]

This case does not, in the opinion of this court, present any exceptional circumstances justifying award of attorneys' fees. Rather, the suspension of Plaintiff resulted at least in part from a misunderstanding as to the effects of relatively recent changes in state statutes. In addition, the firefighters' union is apparently the only such association of public employees in Grand Prairie so that neither the Fire Chief nor other city officials had any prior experience in dealing with such an organization. As previously indicated, we do not believe that the Fire Chief can be absolved of liability based on ignorance of such fundamental rights as speech and association, but we believe that the circumstances in this case militate against the award of attorneys' fees.

Further, because we are proceeding under equitable principles on the attorneys' fee question, it would appear that this court is justified in examining the conduct of Plaintiff himself. The evidence adduced at trial and observation of Plaintiff on the witness stand persuade us that he is a somewhat abrasive and surly individual whose personal characteristics might well bring out the worst in any supervisor. While we do not feel that city officials can properly require that public employees or union representatives must adhere to all of Emily Post's rules of etiquette or Dale Carnegie's guides for winning friends, we do believe

that Plaintiff's "machismo" method of presenting grievances contributed in part to his suspension. Plaintiff apparently never presented "grievances" or "requests"—only non-negotiable demands. And officials to whom grievances were presented were made to understand that their failure to comply would result in unpleasant, although lawfully administered, consequences. But Plaintiff is apparently possessed of an unerring instinct for exactly how far he can go without violating applicable rules (both written and informal) and he exercised this facility to press his every right to its very limit.

For the last time, we will repeat that Plaintiff's conduct cannot be found to be such as would justify suspension unless we are prepared to hold that rights under the United States Constitution, state laws, and local government rules cannot be *fully* exercised; this court cannot so hold despite a deep concern over the day-to-day difficulties and aggravations that a supervisor doubtless experiences in dealing with a subordinate who grudgingly yields up the absolute minimum in respect, cooperation, and courtesy while at the same time seizing virtually every available opportunity to complain, disparage, and threaten. This court does not feel that it would be proper, however, to reward Plaintiff's bad manners and boorish behavior by awarding him attorneys' fees. In so ruling, we do not in any way mean to disparage Plaintiff's attorney whose advocacy in this cause was so impressively skillful and effective. All we mean to say is that an examination of the conduct of both the Fire Chief and Plaintiff leaves this court with the opinion that Plaintiff should pay his own attorneys' fees.

Plaintiff is directed to prepare and submit appropriate form of judgment, approved by Defendants, providing damages as set forth herein and taxing court costs against Defendants.