Joseph A. ORR, Jr., individually, etc., et al., Plaintiffs-Appellants,

v.

A. D. THORPE, Robert R. Johnson, et al., Defendants-Appellees.

No. 27674.

United States Court of Appeals, Fifth Circuit.

June 10, 1970.

Jon C. Moyle, West Palm Beach, Fla., Glassie, Pewett, Beebe & Shanks, Her- shel Shanks, Allan I. Mendelson, Washington, D. C., for appellants.

Howard M. Antevil, Jackson & Jackson, Michael E. Jackson, Palm Beach, Fla., for appellees.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

In this section 1983 case, the district court dismissed the complaint for failure to state a claim upon which relief could be granted.[1] We send the case back to that court "for the normal process of development of the facts and the determination of the real merits of the case.". Merlite Land, Sea & Sky, Inc. v. Palm Beach Investment Properties, Inc., 5 Cir., 1970, 426 F.2d 495.

Since the district court dismissed the complaint for failure to state a claim, for purposes of our review we construe the complaint liberally and take the allegations as admitted. Hargrave v. McKinney, 5 Cir. 1969, 413 F.2d 320, 324. From 1949 until early 1968, the Palm Beach County Board of Public Instruction recognized and dealt with the Palm Beach County Teachers Association (CTA) as the representative of the classroom teachers in Palm Beach County. But during the early part of 1968, a bitter controversy erupted throughout Florida between teachers and the State Board of Education. In Palm Beach, the controversy between CTA and the Palm Beach school board produced a work stoppage and attempted mass resignations. At that point, the Palm Beach school board began to develop its "Professional Affairs Policy, Number 8342.2." In the words of the complaint, the Policy's purpose was "to eliminate Plaintiff CTA and to create an organization of all employees over which the Defendant BPI and its agents have complete control." The Policy carried out this purpose by providing that the school

---

1. Although the district court's order dismissing the complaint states no grounds for doing so, during argument on the motion to dismiss the court answered "Yes" to the question of the plaintiffs' lawyer, "And the basis of the dismissal is a failure to state a cause of action; is that correct, your Honor?"

board would hear representations only by individual teachers or by the committees set up by the Policy, not by organizations such as CTA. The complaint alleges instances where school board members acknowledged that the purpose of the Policy was to destroy CTA. Moreover, no longer can CTA members obtain leave, with or without pay, to attend meetings of CTA, the Florida Education Association, or the National Education Association. Before the implementation of the Policy, CTA members received such permission and, according to the complaint, non-CTA members still receive that permission. The school board has now forbidden CTA to perform its customary "in-processing" function of welcoming newly hired teachers, informing them of benefit programs (health insurance, retirement plans, and a credit union), and inviting them to join CTA. Finally, agents of the school board have threatened CTA members with discriminatory treatment and in one case fulfilled their predictions. The Superintendent allegedly told plaintiff Orr when the latter's name was on the promotion agenda that Orr could not be promoted because he was "a leader of an 'antagonistic' organization." The allegation continues that when racial unrest was threatened Orr eventually received a position at a lower level than originally contemplated.

▆ Under Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80, we cannot escape the conclusion that the plaintiffs have alleged discrimination that could significantly deter freedom of association. It may be that there is adequate explanation and justification for each of these alleged actions, but in this posture of the case we cannot tell. It is equally possible that CTA members are being unnecessarily penalized for their choice of organization. We have no doubt that teachers possess constitutionally protected rights of free association and that section 1983 provides a remedy against state interference. In McLaughlin v. Tilendis, 7 Cir.

1968, 398 F.2d 287, for example, two teachers alleged dismissal and failure to rehire because of their membership in a teachers union. They sought damages and an injunction against further discrimination. The district court dismissed the complaint "holding that plaintiffs had no First Amendment rights to join or form a labor union, so that there was no jurisdiction under the Civil Rights Act". 398 F.2d at 288. The Seventh Circuit reversed, holding that teachers have a right of free association without unjustified interference and the right to form and join a union unless there is illegal intent. That court concluded that section 1983 provided a remedy. Accord, American Federation State, County & Municipal Employees, AFL–CIO v. Woodward, 8 Cir. 1969, 406 F.2d 137 (municipal employees). We agree. The fact that here the discrimination has not extended to actual discharge does not preclude a remedy for the discrimination that has occurred.

We expressly preclude discussion of what remedy is appropriate if the plaintiffs prove their case. The remedy will vary with what they prove, and we consider it unwise to speculate about appropriate action on such a sparse record.

▆ The defendants argue that we should sustain the district court's dismissal for three other reasons: that the members of the school board acting in their official capacities are not within the coverage of section 1983; that the plaintiffs' true remedy is in the Florida courts under Florida statutes and the federal courts should therefore abstain; and that the complaint does not meet the standards for a class action. We reject each of these contentions. The terms of the complaint allege action under color of law within the meaning of Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. The plaintiffs have stated a federal cause of action and do not seek to interpret or attack Florida statutes. Finally, the defendants have shown no good reason

why this action should not be sustained as a proper class action.

We repeat, as always.

that this case is recommitted to the supervision of the Trial Judge without the slightest murmur of a suggestion as to how it should or will come out when the real facts, not what the lawyer says the facts are, are developed or the lack of them demonstrated to a certainty warranting summary judgment, directed verdict or the like.

Merlite Land, Sea & Sky, Inc. v. Palm Beach Investment Properties, Inc., supra.

Reversed and remanded.