Robert L. O'BRIEN et al., Plaintiffs,

v.

William J. LEIDINGER et al., Defendants.

Civ. A. No. 75–0336–R.

United States District Court, E. D. Virginia, Richmond Division.

May 4, 1978.

Jay J. Levit, Stallard & Levit, Richmond, Va., for plaintiffs.

James R. Saul, Asst. City Atty., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, members of Teamsters Local Union # 592 ("Union"), are employed as police officers by the City of Richmond, Virginia ("City"). Plaintiffs bring this action against the City Manager and members of the City Council, who are sued individually and in their official capacities, alleging that the defendants' refusal to enter into good faith discussions with the Union concerning police officers' wages, hours, and working conditions violates plaintiffs' rights guaranteed by the First, Ninth, and Fourteenth Amendments of the United States Constitution. Jurisdiction is alleged under the Constitution, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and pursuant to 28 U.S.C. §§ 1331, 1343. The matter has been tried on the merits and is ripe for disposition.

■ Absent express statutory authority, local governments in Virginia are prohibited by state law from recognizing a labor organization as the exclusive representative of a group of public employees, and hence from negotiating collective bargaining contracts with such organizations. *Commonwealth v. County Board of Arlington County,* 217 Va. 558, 232 S.E.2d 30 (1977).

■ The Attorney General of Virginia has made it clear that municipalities may, however, legally enter into "discussions" concerning wages, hours, and working conditions with representatives of public employee organizations.[1] In short, while the City may not confer *exclusive* bargaining rights upon a particular union or organization, so that a vote of a majority of employees on a contract would bind dissenters, the City may, if it so chooses, discuss employment matters with representatives chosen by its employees. *See, e. g., Commonwealth v. County Board of Arlington County, supra; Newport News Firefighters Ass'n. v. City of Newport News,* 339 F.Supp. 13, 17 (E.D.Va.1972).

Plaintiffs allege that the City has discussed the terms and conditions of employment with labor organizations representing other groups of similarly situated employees, while refusing to discuss such matters with certain of the plaintiffs in their capacities as representatives of Teamsters Local # 592, in violation of each plaintiff's right to equal protection of the laws. Additionally, plaintiffs assert that the City's refusal to meet with Teamster representatives who are not employees of the City, but whom plaintiffs have chosen to be their spokesmen, abridges plaintiffs' First Amendment rights of free speech and association. The Court will address each of these issues seriatum.

### Equal Protection

■ For the plaintiffs to establish an equal protection violation the Court must be satisfied, by a preponderance of the evidence, that (1) the City has entered into discussions concerning the employment relationship with representatives of other groups of similarly situated public employees, while refusing to do the same with

representatives of plaintiffs' Union, and (2) there exists no rational reason for this disparate treatment.

■ The City states that it has followed a policy whereby it has been willing to "discuss working conditions, including wages and hours, with individual employees or with organizations which they form, so long as these are not unions." The Court concludes that this policy has not been followed. Despite assertions to the contrary, the evidence discloses and the Court finds as a fact that the defendants have discussed the terms and conditions of employment with agents, *qua* agents, of unions and other employee organizations not objectionable to the City, while refusing to engage in similar discussions with agents of the plaintiffs' Union.

The evidence reveals that, for several years, both prior and subsequent to July, 1974, the City, through its authorized personnel, has discussed such topics as wages, hours, pensions, holidays, and other fringe benefits with persons it knew to be, and dealt with as, agents of the Richmond Firefighters Association Local # 995, the Fraternal Order of Police, and the Solid Waste Bureau Employees Committee.[2] Defendants contend that the City adopted a new policy in July, 1974, and thereafter refused to recognize persons as union agents for purposes of such discussions. While that policy may have been adopted, the Court finds from the evidence that defendants did not adhere to such policy and in fact continued to deal with union agents as representatives of their respective organizations.

It is undisputed that defendants have steadfastly refused to discuss employment matters with certain of the plaintiffs in their capacities as representatives of the remaining plaintiffs and approximately

---

1. Reports of the Attorney General (1974–75) at 78; *Id.* (1969–70) at 231. *See also* Miller, "The Public Employee Collective Bargaining Issue in Virginia," unpublished (Oct. 6, 1975) (address by the Attorney General to the Fifth Annual Labor Law Conf. of the Virginia Beach Ass'n.).

2. Plaintiffs' reliance on negotiations between the City Department of Parks and Recreation

and the Stage Hands and Musicians Union is, in the Court's view, misplaced. The stage hands and musicians represented by the Union are not permanent employees of the City, but rather independent contractors hired, through that Union, on a short-term basis. These employees are thus not similarly situated to plaintiffs.

four hundred other City police officers who are members of Teamsters Local # 592. Defendants have offered no explanation whatever for this disparate treatment.[3] While equal protection is satisfied if there exists a rational basis for the City's refusal to engage in "discussions" with plaintiffs' chosen representatives, plaintiffs are not bound to speculate as to possible explanations and refute each one. Rather, defendants have the burden of offering an explanation for their conduct. Since defendants have not met this burden, the Court must conclude that defendants have violated plaintiffs' constitutional right of equal protection by refusing to discuss the terms and conditions of employment with certain of the plaintiffs (all of whom are City employees) as representatives of those police officers who affiliate with the Teamsters Union, while engaging in such discussions with agents of other employee labor organizations.

Defendants' refusal to meet with Teamster bargaining agents who are *not* City employees ("outside" agents) raises a wholly separate question. The Equal Protection clause requires only that groups of similarly situated persons be treated equally. The evidence discloses that the City has met with union representatives who were themselves employees of the City ("inside" agents), but not with outside union agents. Therefore, while defendants have an equal protection duty to meet with plaintiffs' inside agents, defendants have no duty under *that* constitutional provision to meet with plaintiffs' outside representatives. Such is not the case, however, under the First Amendment.

### First Amendment

Plaintiffs appropriately claim that once they are accorded the right to choose a union representative, whether by voluntary action of the City or by Court order, the First Amendment guarantees them the right to select *any* representative they wish, whether or not that person be a City employee. Since different constitutional provisions provide different rights, it is entirely logical that the First Amendment may grant plaintiffs rights quite apart from the rights secured by the Equal Protection Clause.

The first inquiry the Court must address under a First Amendment analysis is whether the First Amendment protects plaintiffs' interest in selecting the spokesman of their choice to advocate on their behalf in discussions with the appropriate officials of the City. If the First Amendment's protection applies, the Court must then balance the plaintiffs' interests against the City's competing interests to determine whether the City's refusal to meet with non-employee representatives of the Union impermissibly infringes upon plaintiffs' constitutionally protected rights. *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

 It is clear that the First Amendment not only protects the right of an individual to associate with other like-minded persons to advance common goals, but also guarantees the derivative[4] right of an association to advocate on behalf of its members. *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *Eastern Railroad Presidents Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1976); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). This protection extends to economic as well as political associations and specifically encompasses the right to unionize. *Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945). Moreover, it is clear that public

---

3. In particular, the City has offered no explanation for its willingness to discuss such topics as wages and benefits with agents of the Fraternal Order of Police, which represents police officers who are members of the FOP, but not with plaintiffs, who represent police officers who belong to the Teamsters.

4. Associations such as unions derive their First Amendment right from the rights of their members. Thus, when a union's right to speak is abridged, its members' rights of association and speech are abridged as well.

employees enjoy many of the same rights as other workers to advance their common interests through unionization. *AFSCME v. Woodward,* 406 F.2d 137 (8th Cir. 1969); *McLaughlin v. Tilendis,* 398 F.2d 287 (7th Cir. 1968); *Melton v. City of Atlanta,* 324 F.Supp. 315 (N.D.Ga.1971) (three judge court); *Atkins v. City of Charlotte,* 296 F.Supp. 1068 (W.D.N.C.1969) (three judge court) (Craven, J.).

 The right to associate for common goals encompasses the right to advocate effectively in pursuit of such goals. *Buckley v. Valeo, supra; Eastern Presidents Railroad Conference v. Noerr Motor Freight, supra.* "[The] right [of association] is protected because it promotes and may well be essential to the '[e]ffective advocacy of both public and private points of view, particularly controversial ones' . . . that the First Amendment is designed to foster." *Runyon v. McCrary,* 427 U.S. at 175, 96 S.Ct. at 2597, 49 L.Ed.2d —— (citation omitted). The right to advocate would be hollow indeed if the state, rather than the association's members, could select the group's advocate. For example, the City could not limit the right of the Union to advocate on behalf of its members in a public forum by restricting the eligible speakers to persons employed by the City. *Cf. City of Madison Joint School District v. Wisconsin Employment Relations Commission,* 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976) (First Amendment rights of non-union teachers violated by defendant's order limiting right to speak at open meetings of the Board of Education, on matters involving the employment relationship, to persons selected by the Teachers Union); *Williams v. Rhodes,* 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968) (voters' First Amendment right to associate with the candidate of their choice unconstitutionally abridged by state law that effectively limits ballot position to persons endorsed by one of the two major political parties).

The City argues, however, that the First Amendment's protection is not applicable in the instant case because plaintiffs' right to speak through their Union derives not from the existence of a public forum, but solely from defendants' equal protection violation, and the extent of that violation necessarily delimits the extent of the remedy the Court may impose.

 While superficially appealing, defendants' argument must be rejected. The City is a public body, bound in *all* its official actions—including those in its role as employer—by the commands of the First Amendment. Defendants contend that the First Amendment's protection cannot be invoked to extend the limited right created by virtue of the Equal Protection violation. But the First Amendment's protection is often triggered by the government's voluntary actions. *See, e. g., Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (while government has no duty to employ its citizens, once it chooses to do so it cannot grant or deny such employment because of a citizen's affiliation with a particular political party); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (while state college has no duty to renew non-tenured professor's contract of employment, it cannot predicate its refusal to do so on the professor's exercise of First Amendment rights); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (while state has no duty to provide unemployment benefits, it may not cut off such benefits on the basis of a citizen's exercise of her religious faith); *Hannegan v. Equire, Inc.,* 327 U.S. 146, 66 S.Ct. 456, 90 L.Ed. 586 (1946) (although government need not establish postal service, once it does, it may not condition grant of mailing permit on promise that certain ideas not be disseminated). *See generally* Van Alstyne, *The Demise of the Right-Privilege Distinction in Constitutional Law,* 81 Harv.L.Rev. 1439 (1968); Note, *Unconstitutional Conditions,* 73 Harv.L.Rev. 1595 (1960). Thus, once plaintiffs are accorded the right to advocate through union representatives in employment discussions with the City, whether by voluntary action of the City or by Court order to redress an equal protection violation, the First Amendment necessarily defines what limits, if any,

the City may permissibly place on that right.[5]

"The prohibition on encroachment of First Amendment protections is not an absolute. Restraints are permitted for appropriate reasons." *Elrod v. Burns,* 427 U.S. at 360, 96 S.Ct. at 2683. It remains, then, to determine whether defendants' refusal to meet with non-employee representatives of plaintiffs' Union *impermissibly* burdens plaintiffs' right of association.

In *Pickering v. Board of Education,* 391 U.S. at 568, 88 S.Ct. at 1734, the Supreme Court stated:

> [I]t cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general. The problem in any case is to arrive at a balance between the interests of the [employee] . . . and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

Thus, it has been held that the government may regulate the speech of its employees in furtherance of the goals of their employment. *See, e. g., Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973) (upholding restrictions on partisan political activities of federal employees); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (same as to state employees). It follows that defendants may not restrict plaintiffs' choice of

representative to employees of the City without satisfying the Court that the reasons for such a rule justify the consequential encroachment upon plaintiffs' constitutional liberties.

█ Defendants suggest two reasons why they prefer to discuss employment matters with police representatives who are themselves employed by the City, rather than with outside union agents. Defendants assert that discussions between employer and employees promote a harmonious employment relationship, while discussions with professional union representatives encourage strife and discord. Further, defendants contend that direct discussions with their employees are more efficient in finding mutually acceptable solutions to grievances.

Plaintiffs counter that the City's refusal to meet with their chosen union representatives severely restricts their freedom of speech. They explain that none of their local union members is experienced or skilled in presenting employee grievances or discussing employment matters on behalf of union members. Additionally, plaintiffs assert that a non-employee representative would be less subject to intimidation and harassment by City officials and thus would more aggressively represent the policemen's interests in discussions with the City.

The Court has no doubt that the City's articulated interests are legitimate and worthwhile.[6] A public employer, as any employer, reasonably is concerned with maintaining open lines of communication

---

**5.** The City suggests that even if plaintiffs have a right to speak through any union representative they select, the City has no duty to listen to such a representative. This attempted distinction misconceives the very nature of the jurisprudential concept of rights and duties. Whenever there exists a *right* in any person, there also exists a correlative *duty* in some other person or persons not to abridge or interfere with the exercise of that right. Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning,* 23 Yale L.J. 16 (1930). As Justice Harlan has stated, "the right to have one's voice heard and one's views considered by the appropriate governmental authority is at the core of the right of political association." *Williams v. Rhodes,* 393 U.S. 23,

41, 89 S.Ct. 5, 16, 21 L.Ed.2d 24 (1968) (concurring opinion). Thus, if plaintiffs have a right to be represented by an agent of their choosing in discussions with the City, they also have the right to have their views, expressed by their agent, heard by the City. In defendants' terms, the City, acting through defendants, would have a "duty to listen" to the plaintiffs' representative, correlative to and inseparable from the plaintiffs' right to speak through that representative.

**6.** Of course, the National Labor Relations Act, 29 U.S.C. § 151 *et seq.,* may make such conduct unlawful under certain circumstances.

between management and labor. However, to justify its policy of meeting only with police representatives who are City employees, the City must demonstrate that that policy directly furthers its legitimate interests and is reasonably necessary to those ends. *See, e. g., Tygrett v. Washington,* 177 U.S.App.D.C. 355, 543 F.2d 840 (1974); *Elk Grove Firefighters Local v. Willis,* 400 F.Supp. 1097 (N.D.Ill.1975).

It must be remembered that the issue before the Court is not whether police unions per se are beneficial or harmful, but rather whether the City's refusal to deal with outside union representatives is justifiable in light of its equal protection obligation to discuss employment matters at least with "inside" representatives of the Teamsters local. The Court is not convinced that the City's action in this regard closely promotes its avowed interests. Upon consideration of all factors suggested by the parties, the Court concludes that, on balance, the plaintiffs' interest in effective advocacy of their views outweighs the City's allegedly competing interests.

### REMEDY

Plaintiffs seek declaratory and injunctive relief, monetary damages, and an award of costs and attorneys' fees.

■ The Court concludes that while plaintiffs are entitled to a declaration of their rights, injunctive relief would be inappropriate at this juncture. Federal courts are reluctant to exercise their equitable discretion to award injunctions "in the absence of a compelling need for that form of relief." Wright & Miller, Fed. Practice and Procedure: Civil § 2942. Defendants here are all City employees. The Court has seen no evidence that defendants are apt intentionally to violate plaintiffs' constitutional rights now that those rights have been clearly defined. Accordingly, unless circumstances change, plaintiffs' request for injunctive relief will be withheld.

Plaintiffs have introduced no evidence of actual injury sustained as a result of defendants' actions. On the facts of this case, the Court will not presume injury. *See*

*Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Nominal damages, in the amount of $1, will be awarded to each plaintiff.

■ Plaintiffs additionally seek an award of punitive damages. The Court finds that plaintiffs have failed to carry their burden of proving that defendants acted in bad faith or in reckless disregard of plaintiffs' rights.

■ Lastly, plaintiffs seek an award of costs and attorneys' fees. Under the "American Rule", absent statutory authority to the contrary, each litigant in federal court must bear his own attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Plaintiffs' having cited no statutory authority in support of their position, their request for an award of attorneys' fees will be denied. Costs will be taxed to the defendants.

An appropriate order will issue.