KENAI PENINSULA BOROUGH SCHOOL DISTRICT, Appellant,

v.

KENAI PENINSULA BOROUGH SCHOOL DISTRICT CLASSIFIED ASSOCIATION, Appellee.

No. 3800.

Supreme Court of Alaska.

Feb. 16, 1979.

Stephen C. Hillard, Allen McGrath, and Chris J. Rigos, of Graham & James, Anchorage, for appellant.

William Jermain, of Jermain, Dunnagan & Owens, Anchorage, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

MATTHEWS, Justice.

On February 17, 1975, the Kenai Peninsula Borough School Board adopted a comprehensive labor relations policy by which it bound itself to recognize and bargain collectively with an organization to be formed by a majority of the non-certificated school employees of the District, *e. g.*, secretarial, custodial, and cafeteria personnel. The policy stipulated that the District would not negotiate (1) with any individual who was not an employee of the School District, nor (2) with an employee organization affiliated with any state or national labor union.[1]

The appellee Association was duly organized and subsequently recognized by the District on February 21, 1977, as the employee bargaining agent. One month later, after negotiations had not progressed to its satisfaction, in part because the School District would not permit an employee consultant into the negotiating room, the Association affiliated with the Kenai Peninsula

---

1. The recognition paragraph of the policy reads:

> The Kenai Peninsula Borough School District will recognize, for the purpose of discussing and negotiating mutually satisfactory agreements on specified matters pertaining to their employment, the Kenai Peninsula Borough School District classified employee group which on a certain date has, as bona fide members, a majority of the total classified staff employed by the district on that date and which files a certified list of such members with the Superintendent of Schools. The Kenai Peninsula Borough School District will negotiate only with employees of the district. The Board will not recognize for the purpose of negotiations, any union or association which is not made up exclusively of Kenai Peninsula Borough School District employees nor will the Board negotiate with a local association affiliated with a state or national union.

Federation of Teachers, itself an affiliate of the American Federation of Teachers. The District then refused to negotiate further, demanding that the Association disaffiliate from the Kenai Peninsula Federation. The Association brought suit, seeking to compel the District to resume negotiations.

On September 19, 1977, Judge Peter J. Kalamarides granted summary judgment to the Association, finding the aforementioned restrictive provisions both unconstitutional and severable from the rest of the labor policy, and ordered the District to resume negotiations. The School District appeals from both judgments. We affirm.

## I

It is conceded for purposes of this litigation that the right of the non-certificated school employees to compel their employer to bargain collectively arises solely out of the labor relations policy enacted by the District. These employees are not among those within the ambit of the National Labor Relations Act, 29 U.S.C. § 152(2) (1970), or the Alaska Public Employment Relations Act, AS 23.40.250(5), and the Association, in the face of much contrary authority, does not seek to establish such a right in the federal constitution. *See, e. g., University of New Hampshire Chap. of Am. Ass'n. of Univ. Profs. v. Haselton*, 397 F.Supp. 107, 109 (D.N.H.1975); *Atkins v. Charlotte*, 296 F.Supp. 1068, 1077 (W.D.N.C.1969).

The first question that confronts us then, is whether the School District can grant non-certificated employees the right to bargain collectively and simultaneously decree whom the employees may send to the bargaining table as their representative, and with whom they may affiliate to effectuate their right under the labor policy. We hold that the first amendment prohibits such restrictions.

Forty-two years ago, the Supreme Court asserted that:

[In] safeguard[ing] the right of employees to self-organization and to select representatives of their own choosing for collective bargaining or other mutual pro-

tection without restraint or coercion by their employer. . . . [the National Labor Relations Act goes no further than to safeguard] a fundamental right. . . Hence the prohibition by Congress of interference with the selection of representatives for the purpose of negotiation and conference between employers and employees, 'instead of being an invasion of the constitutional right of either, was based on the recognition of the rights of both.'

*NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33–4, 57 S.Ct. 615, 622–623, 81 L.Ed. 893, 909–10 (1937) (citations omitted). The associational right so identified emanates from the protections afforded by the first amendment. *See Brotherhood of Railroad Trainmen v. Virginia*, 377 U.S. 1, 5, 84 S.Ct. 1113, 1116, 12 L.Ed.2d 89, 93 (1964).

It can no longer be disputed that the right to affiliate with the union of one's choice is the right of the public employee as well as the private employee. *Lontine v. VanCleave*, 483 F.2d 966, 967 (10th Cir. 1973); *Orr v. Thorpe*, 427 F.2d 1129, 1131 (5th Cir. 1970); *American Federation of State, County, & Munic. Employees v. Woodward*, 406 F.2d 137, 139 (8th Cir. 1969); *McLaughlin v. Tilendis*, 398 F.2d 287, 288 (7th Cir. 1968); *O'Brien v. Leidinger*, 452 F.Supp. 720 (E.D.Va.1978). *See Thomas v. Younglove*, 545 F.2d 1171, 1172 (9th Cir. 1976); *Lodge 1858, American Federation of Gov't. Employees v. Paine*, 141 U.S. App.D.C. 152, 164, 436 F.2d 882, 894 n.72 (1970). It is implicit in the cases just cited, that public employees are free to join a national as well as a local union, for in each case the petitioning employees had, in one manner or another, in fact affiliated with a national organization. *Accord, Atkins v. Charlotte*, 296 F.Supp. 1068 (W.D.N.C.1968). We have recognized that same freedom for employees covered by the Alaska Public Employment Relations Act, AS 23.40.070. *State v. Petersburg*, 538 P.2d 263, 267 (Alaska 1975).

We can find no sound basis for distinguishing an employee's freedom in affiliation from the right to freely choose his

or her representative at the bargaining table. The two are inseparable under the National Labor Relations Act, *see General Electric Co. v. NLRB*, 412 F.2d 512, 517 (2d Cir. 1969), in the Supreme Court's identification of fundamental rights in *NLRB v. Jones, supra,* and would seem to be similarly inseparable in fact. A powerful incentive in affiliating with a national union is the effective advocacy thereby secured. Governmental interference with a labor organization's ability to effectively assert its members' legal rights has been held to be an unconstitutional impairment of associational freedoms. *United Mine Workers v. Illinois State Bar Ass'n.*, 389 U.S. 217, 221–222, 88 S.Ct. 353, 355–356, 19 L.Ed.2d 426, 430–1 (1967); *Brotherhood of Railroad Trainmen*, 377 U.S. at 6, 84 S.Ct. 1113, 12 L.Ed.2d at 93. We thus find the conclusion inescapable that the right of the District's non-certificated employees to "select representatives of their own choosing for collective bargaining," be they from local or national organizations, "without restraint or coercion by their employer," is grounded firmly in the first amendment. *NLRB v. Jones, supra.*

■ The School District does not dispute this conclusion. Instead it argues that the employees represented by the Association are still quite free to join the Kenai Federation. All they cannot do is both affiliate and retain the "privilege" to bargain collectively.

Essentially the District is reiterating Holmes' observation that "[t]he petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." *McAuliffe v. Mayor of New Bedford*, 155 Mass. 216, 29 N.E. 517 (1892). In the first amendment area the distinction between right and benefit has long been dead. A government may not confer a statutory right or benefit and withdraw it when the beneficiary exercises a constitutional prerogative. Neither may it confer a right and condition it unconstitutionally in the same breath. Numerous cases in the past twenty-five years have made these propositions irrebuttable. *See, e. g. Elrod*

*v. Burns*, 427 U.S. 347, 361, 96 S.Ct. 2673, 2683, 49 L.Ed.2d 547, 558 (1976), and the cases cited therein. *Accord, State v. Wylie*, 516 P.2d 142, 146 (Alaska 1973). As the Supreme Court recently stated in *Abood v. Detroit Board of Education*, 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261, 283 (1977):

> [A] government may not require an individual to relinquish rights guaranteed him by the First Amendment as a condition of public employment.

■ The District is thus left with the task of persuading us that the interests embodied in the labor policy's restrictions outweigh the value of the associational freedoms impinged. The School District would have this court scrutinize its restrictive provisions only for a "rational relationship" to the interests it asserts are at stake here. But a "rational connection . . . will not suffice." *Thomas v. Collins*, 323 U.S. 516, 530, 65 S.Ct. 315, 322, 89 L.Ed. 430, 440 (1945). To override a presumptive first amendment right the School District's interest must be "paramount, one of vital importance." *Elrod*, 427 U.S. at 362, 96 S.Ct. at 2684, 49 L.Ed.2d at 559; *Woodward*, 406 F.2d at 140; *McLaughlin*, 398 F.2d at 290. And even if the School District's "purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231, 237 (1960).

The burden is on the School District to show the existence of such a paramount interest. *See Elrod*, 427 U.S. at 362, 96 S.Ct. 2673, and the cases cited therein. In its argument below the School District justified the non-affiliation provision by its interest in avoiding negotiations "conducted by outsiders." In this court it has added others: avoiding the "rigidity in demands," the escalation of "employee relations tensions," and the "test cases" mind-set allegedly characteristic of national unions. Since "uniquely local interests" are involved, the District desires "negotiations

[that] are uniquely local in character." Finally, it argues that as a public employer it must be allowed to recognize that "[s]trong union demands may either exceed the capacity of the democratically-controlled budget process . . . or they may overwhelm a management negotiator not constrained by ordinary 'profit' motivations."

■ The essence of the District's asserted interest is that it needs to exercise prospective control over the vigor with which its non-certificated employees will be represented at the bargaining table. We can see in this no more than a bald assertion that will lead to too much labor unrest if public employees are permitted to exercise their first amendment rights. We rejected such a contention with regard to public employees covered by the Public Employment Relations Act, *State v. Petersburg, supra,* and we reject the contention here. To construe the School District's interest here as so paramount as to override the fundamental right to freely choose one's representatives, would render the latter right illusory, for it is difficult to imagine a context in which public employees could then successfully assert it.[2]

In contending that it should be permitted to constrict the Association's effectiveness as it sees fit, the School District points to the many decisions finding that public employees cannot compel collective bargaining without statutory authority, and to those permitting restraints on the right to strike. However, those cases which uphold the aforementioned restraints take great pains to distinguish the rights in issue here.

The right to strike, because of its more serious impact upon the public interest, is more vulnerable to regulation than the right to organize and select representatives for lawful purposes of collective bargaining which this Court has characterized as a 'fundamental right' and which, as the Court has pointed out, was

recognized as such in its decisions long before it was given protection by the Labor Relations Act.

*International Union Local 232 v. Wisconsin Employment Relations Board,* 336 U.S. 245, 259, 69 S.Ct. 516, 524, 93 L.Ed. 651, 666 (1948) (citations omitted). *See also United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879, 883 (D.D.C.), *aff'd mem.,* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971).

As we read these decisions they posit a constitutional framework in which employees are free to organize and select an advocate, and from that guarantee of collective strength then lobby their various legislatures for particular rights in the employer/employee relationship. *See, e. g., Atkins v. Charlotte,* 296 F.Supp. 1068, 1077 (W.D. N.C.1968). The virtue of that view is its consistent emphasis on freedom of action, and its antagonism to coercion. And within that perspective it does not follow at all, that once bargaining rights are successfully secured, as in the instant case, the constitutional rights disappear.

We affirm the superior court's judgment that the School District's policy restrictions on affiliation and choice of bargaining representative are violative of first amendment freedoms guaranteed to the non-certificated school employees.

## II

■ Having decided that portions of the School District's labor policy are unconstitutional, we must now decide whether these may be severed, leaving the remainder of the policy intact and enforceable.

In determining questions of severability, we make two inquiries. *Lynden Transport, Inc. v. State,* 532 P.2d 700 (Alaska 1975). First we must determine whether the constitutional portions of the policy, standing alone, can be given legal effect. *Id.* at 713. The School District concedes that they can, and no further discussion is necessary.

---

**2.** We note that the District has incorporated in its labor policy other means of dealing with the problems it fears a strong union will create, means which do not impinge on associational freedoms. For example, the labor policy forbids all forms of work stoppages, significantly constricts the scope of mandatory bargaining subjects, and stipulates that any agreement reached by the negotiators will only be advisory to the school board.

Second, we must identify the primary purpose of the labor policy, and determine whether this purpose can be achieved with the invalid provisions stricken. *Id.* at 714–15. "The test . . . is whether the remaining parts are so independent and complete that it may be presumed that the [School District] would have enacted the valid parts without regard to the invalid part." *Jefferson v. State,* 527 P.2d 37, 41 (Alaska 1974). It is not dispositive that the stricken portions constitute a fragment of a paragraph. *Lynden Transport, supra; Speidel v. State,* 460 P.2d 77 (Alaska 1969).

■ We find that the primary purpose of the labor policy is stated in its preamble:

[T]he Board wishes to maintain its long tradition of fair play with its employees by enacting a policy which will set the stage for harmonious and cooperative relations between the Board and its classified employees and to protect the public by assuring orderly and uninterrupted operations of the district.

After striking only the unconstitutional restrictions of the policy, the superior court concluded that the purpose articulated in the preamble could still be fulfilled. We concur.

The policy adopted by the school board contains more than just the language authorizing collective bargaining and limiting affiliation rights. The recognition paragraph states that the association may not limit membership on the basis of race, religion, creed, sex, or marital status. It prohibits making membership in the association or payment of dues a condition of employment. It prohibits strikes or slowdowns by association members and requires that the association assist in preventing these where possible. Beyond the recognition section, other sections of the labor policy lay down the conditions an association must meet before it will be deemed by the school board to have been authorized by the school employees to represent them. The section titled "Scope of Bargaining" narrowly limits what the association can discuss in negotiations, and prohibits negotiations on "inherent managerial policy", which includes but is not limited to the functions and programs of the Board, standards of services, the district budget, utilization of technology, the organizational structure of the schools and the selection and direction of personnel, including work hours, assignments, transfers, job descriptions, promotions based on merit with seniority a secondary factor, the determination of other hiring and dismissal or demotion procedures.

Other sections of the policy cover, among other things, what will happen if the parties cannot agree in negotiations, disputes procedures, and the duration of any labor agreement. All of these provisions of the labor policy apply regardless of whether the association is affiliated with a non-local organization or not.

Given the detailed nature of the labor relations policy when read as a whole, we conclude that the superior court properly found that the non-affiliation clause is severable. The primary purpose of the policy is clearly stated in the preamble. There the school board said that it wished to preserve "harmonious relations" with its classified employees and assure smooth operation of the school district. Although the non-affiliation clause may be considered an important part of the structure the board created to achieve these goals, deleting the clause will leave virtually all of the labor policy intact. Since the school board obviously considered collective bargaining important to the maintaining of good relations with its classified employees, we cannot assume that it would not have enacted the constitutional portions, had it known that two restrictions would be found unconstitutional.

AFFIRMED.

RABINOWITZ, Justice, dissenting in part.

I am in agreement with the court's holding that those portions of the School District's labor policy which place restrictions on affiliation and choice of bargaining representative are violative of the first amendment rights of non-certificated school em-

ployees. My disagreement with the court's opinion centers on the majority's conclusion that the non-affiliation clause is severable.

In discussing presumptions of separability and inseparability in *Lynden Transport, Inc. v. State,* 532 P.2d 700, 711–12 (Alaska 1975), we quoted, with approval from *Carter v. Carter Coal Co.,* 298 U.S. 238, 312, 56 S.Ct. 855, 873, 80 L.Ed. 1160, 1189 (1936), where the Supreme Court said in part:

> Under the statutory rule, the presumption must be overcome by considerations which establish 'the clear probability that the invalid part being eliminated the Legislature would not have been satisfied with what remains.'

In my view, non-affiliation is a paramount part of the structure upon which the Board's labor policy rested. Before the re-

mainder of the policy had any applicability, the employees' organization had to meet the recognition requirement. I think it apparent that the non-affiliation clause was intended as a mandatory requirement for it embodies one of the two explicit requirements found in the recognition paragraph— the other being proof of majority representation. Thus, I conclude that it cannot be fairly said that the Board viewed the non-affiliation requirement as severable, "independent," or "non-essential." [1]

1. In short, I have concluded that the burden of proof adopted in *Lynden Transport, Inc. v. State,* 532 P.2d 700, 711–12 (Alaska 1975), as applied in the instant case, leads to the result that the non-affiliation clause was not severable. In reaching this conclusion, I assume arguendo that there is a statutory presumption of severability with regard to the Board's labor policy, but find that the record establishes the "clear probability" that the Board "would not have been satisfied" with the labor policy without the non-affiliation clause.