**ANCHORAGE MUNICIPAL EMPLOY-
EES ASSOCIATION, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE,
Appellee.**

No. 4562.

Supreme Court of Alaska.

Oct. 31, 1980.

Fredric R. Dichter, Teamsters Union Local 959, Anchorage, for appellant; Joe P. Josephson, Howard S. Trickey, and Ronald W. Lorensen, Josephson, Trickey & Lorensen, Inc., Anchorage, of counsel.

Theodore D. Berns, Municipal Atty., Anchorage, for appellee.

---

* This case was submitted to the court for decision prior to Justice Boochever's resignation.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER,* BURKE and MATTHEWS, JJ.

CONNOR, Justice.

In this case we are once again asked to interpret Section 4 of the Public Employment Relations Act (PERA), ch. 113, SLA 1972, which authorizes the legislative body of any political subdivision to reject application of the Act to its public employees. The specific question presented for review is whether the Municipality of Anchorage is governed by the provisions of PERA, despite the attempt by it and its governmental predecessors to exempt themselves from the Act. The superior court held that PERA did not apply, and granted summary judgment in favor of the Municipality. We affirm.

In 1972 the legislature enacted the Public Employment Relations Act, AS 23.40.-070–.260, which conferred upon public employees the right to organize and bargain collectively with their employers. Simultaneously with the enactment of the PERA, the legislature repealed former AS 23.40.-010 which permitted but did not require public employers to recognize and bargain collectively with labor organizations representing their employees. PERA was signed by the Governor on June 7, 1972, and became effective on September 5, 1972.

Both the City of Anchorage (the City) and the Greater Anchorage Area Borough (GAAB), the governmental predecessors of appellee, the Municipality of Anchorage, recognized and engaged in collective bargaining with various labor organizations elected by their employees under former AS 23.40.020. On August 8, 1972, one month before the effective date of the PERA, the City by resolution exercised its option under Section 4 to reject application of the Act. The GAAB Assembly passed its resolution rejecting coverage under PERA in April of 1973 and at the same time enacted a com-

prehensive local employee relations ordinance which was supported by representatives of various labor organizations.

Both GAAB and the City continued to bargain collectively with labor organizations elected by their employees, under their local procedures, after their respective exemptions from PERA.

In September of 1975, the GAAB and the City merged into a single home rule municipality. On October 14, 1975, the new Municipality of Anchorage, the appellees here, passed a resolution formally rejecting application of PERA to its employees. The Municipality's labor relations were governed under GAAB's labor ordinance until April, 1976, at which time the Municipal Assembly adopted its own comprehensive labor relations ordinance.

It is a provision of this ordinance which has sparked the present controversy. As originally adopted, the ordinance stated that "[t]he provisions of the Personnel Rules and Regulations may not be varied by negotiation except as expressly so authorized therein." [1] On January 10, 1978, the Assembly adopted ordinance 77–376 [2] (substitute) which amended the above section of former AO 69–75 to provide that provisions of the "Personnel Rules and Regulations *may be substituted by negotiated agreements,*" (emphasis added) with the exception of three specified areas which are still nonnegotiable.[3] When the Municipality refused to bargain over certain of the items removed from collective bargaining by AO 77–376, the Anchorage Municipal Employees Association (AMEA) brought suit in the

superior court seeking a declaration that the Municipality is governed by PERA and an order requiring the Municipality to bargain collectively over the disputed items. AMEA appeals from the superior court's denial of its motion for summary judgment and award of summary judgment in favor of the Municipality.

AMEA presents three alternative theories in support of its assertion that the Municipality is bound by the requirements of PERA despite its explicit exemption pursuant to Section 4. First, it contends that the authority to opt out of PERA under Section 4 is not applicable to the Municipality or its predecessors. Next, AMEA argues that, assuming the availability of Section 4, the Municipality and its predecessors did not effectively exercise their exemption thereunder. Lastly, AMEA contends that even if there has been a properly executed exemption, the Municipality may not conduct its labor relations in a manner which is inconsistent with state policy as expressed in PERA.

### I

The argument advanced most forcefully by AMEA is that the option to reject PERA pursuant to Section 4 is not applicable to local governments such as the Municipality or its predecessors.

Central to our resolution of this issue is the proper interpretation of Section 4, Chapter 113, SLA 1972, which provides with relation to PERA:

> "Each collective bargaining agreement made after the effective date of this chapter shall incorporate by reference the then current Personnel Regulations of Anchorage. The provisions of the Personnel Regulations may be substituted by negotiated agreements except Rule 12.7, Length of Service; Rule 14, Holidays, and Rule 15, Leave, which shall not be negotiable."
>
> AO 77–376 is codified as Anch.Mun.Cd. § 3.70.-170.

---

**1.** Former AO 69–75 provided:

"Each collective bargaining agreement made after the effective date of this ordinance shall incorporate by reference the then current Personnel Rules and Regulations of Anchorage in their entirety. The provisions of the Personnel Rules and Regulations may not be varied by negotiation except as expressly so authorized therein. Any changes made to the Personnel Rules and Regulations during the term of any collective bargaining agreement shall not be applicable to that agreement."

**2.** AO 77–376 (substitute) provides in relevant part:

**3.** Although AMEA alleges that the amended ordinance diminished employee rights, in fact it *expanded* the items that were to be subject to collective bargaining.

"This Act is applicable to organized boroughs and political subdivisions of the state, home rule or otherwise, unless the legislative body of the political subdivision, by ordinance or resolution, rejects having its provisions apply."

AMEA interprets this section as basically a "grandfather clause" designed to permit local governments, which were in existence at the time PERA took effect and were not already engaged in collective bargaining with their employees, to maintain the status quo and to avoid having collective bargaining suddenly imposed upon them with the adoption of PERA. In light of this interpretation, AMEA urges us to construe Section 4 as authorizing rejection of PERA for only a limited period of time after its enactment and then only by those local governments which had not yet undertaken collective bargaining with their employees.[4] An adoption of this construction would render the exemptions of all three government entities involved here ineffective, since at the time the statute was enacted, the Municipality was three years from existence, and both of its predecessors were already engaged in collective bargaining with their employers.

The Municipality contends that there is nothing in the legislative history or other extrinsic evidence to support AMEA's interpretation of Section 4. In the absence of any clear evidence indicating that the legislature intended otherwise, the Municipality submits, Section 4 should be construed consistently with its plain meaning, as "a simple local option provision" allowing municipalities to reject coverage by PERA and regulate their labor relations matters on a local level.

While acknowledging that there is no legislative history shedding light on the meaning of Section 4, AMEA contends that its interpretation is supported by our decision in *State v. Petersburg*[5] and other provisions of PERA. In *Petersburg,* we first construed Section 4 in the context of the entire Act. There we found the most clear expression of the legislature's intent in adopting PERA in the portion of the Act's statement of policy which reads:

"The legislature declares that it is the public policy of the state to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government. These policies are to be effectuated by

(1) recognizing the right of public employees to organize for the purpose of collective bargaining;

(2) requiring public employers to negotiate with and enter into written agreements with employee organizations on matters of wages, hours, and other terms and conditions of employment...."[6]

In light of such a strong statement in favor of public employees' right to organize and bargain collectively, we declined to construe Section 4 in a manner which would substantially interfere with the employees' assertion of those rights. Thus we held that "the right and power of the City to reject the Act become[s] subordinated to the rights of the employees granted by the same legislation" once the public employer becomes "aware of substantial organizational activity" on the part of its employees. 538 P.2d at 267.

AMEA argues that the limitation imposed in *Petersburg* upon a public employer's ability to reject PERA is applicable to those governments already engaged in collective bargaining with their employees pursuant to a local scheme. A municipality

---

**4.** AMEA argued a quite different interpretation of Section 4 before the superior court: that it was intended to cover municipalities which were in existence at the time PERA was enacted and had already developed or were in the process of developing their own local labor relations ordinance. Although we will not generally address an argument raised for the first time on appeal, we have decided to consider appellant's present interpretation of Section 4 because it is within the general realm of arguments presented to the superior court, and because the issue is one of public importance involving no factual disputes.

**5.** 538 P.2d 263 (Alaska 1975).

**6.** AS 23.40.070.

is "aware of organizational activity" by virtue of having bargained with representatives of its employees, AMEA maintains, and is thus precluded from rejecting PERA. This argument misconstrues our holding in *Petersburg* by taking it out of context from the factual setting in that case. The City of Petersburg took no action towards exercising its option to reject PERA until more than six months after the Act's effective date and after it became aware of organizational efforts by its employees to be represented by a particular union. The majority held: "Rejection of the PERA after becoming aware of such activity constitutes a gross and impermissible interference with the employees' freedom to choose which collective bargaining association should represent them." *Id.* The majority's primary concern in *Petersburg* was that, given a broad open–ended construction, the exemption provision could be used as a means of blocking attempts by public employees to pursue the rights granted them by PERA.

There is nothing in the instant case to suggest that the exemptions of the Municipality or its predecessors served to eliminate, diminish, or even affect existing rights of employees. Rather, the rejections of all three government entities merely served to perpetuate the status quo. AMEA itself acknowledges that "from a practical point of view, nothing particularly remarkable or disturbing (in the eyes of the municipality's employees) resulted from these rejections. Collective bargaining between public employer and employee proceeded and was carried out in a manner wholly consistent with labor relations 'models' generally and with the PERA, specifically." In fact, even the Municipality's substitution of the ordinance which sparked this controversy actually expanded rather than diminished the employees' rights.

■ It would be a different matter if a municipality which had previously engaged in collective bargaining with its employees,

upon the enactment of PERA, opted out in order to avoid recognizing a particular employee organization, as in *Petersburg*, or in order to gain an undue advantage in a labor dispute or the negotiation of a new collective bargaining agreement. Rejection of PERA under those circumstances constitutes a deliberate interference with the right of employees to organize and bargain collectively in derogation of the Act's express declaration of policy. Here all evidence indicates that all three governments exempted themselves solely for the purpose of retaining local control over their labor relations, and with the clear intent of continuing collective bargaining rather than to interfere with established employee rights. *Petersburg* does not prohibit rejection of PERA under these circumstances.

■ Nor does *Petersburg* set a limited time period of six months after the enactment of PERA during which the exemption must be exercised, thus precluding exemption by newly formed governments such as the Municipality which were not in existence during that period. *Petersburg* merely holds that a public employer which chooses to opt out of PERA must do so promptly, rather than at its leisure, and that under the facts of that case, six months was adequate time for the City to act. The decision does not deprive a newly formed municipality of the option to reject PERA, so long as it does so promptly after its formation and without interfering with the employees' exercise of their established rights. To hold, as AMEA urges, that the exemption option was only intended to be available for a limited period of time after the enactment of PERA would basically rob Section 4 of any continued validity even though it is still printed in the Alaska Statutes.[7] Had the legislature wanted Section 4 to be of temporary duration, we think it would have so indicated.

We are even less persuaded by AMEA's assertion that the legislature intended that

---

7. We assign no significance to the fact that Section 4 was printed in the Special and Temporary Acts portion of the Alaska Statutes rather than being codified with the remainder

of PERA. The language of Section 4 is also printed as an editors note in the body of the Act and it has not been repealed.

collective bargaining within the state be done in accordance with PERA or not at all. AMEA contends that the repeal of the permissive authority in former AS 23.40.010 deprived local governments of the power to engage in collective bargaining on a local level. This argument erroneously assumes that public employers in Alaska are prohibited from engaging in collective bargaining with their employees absent statutory authorization. We have previously recognized the power of local governments to adopt their own system of collective bargaining, despite the repeal of AS 23.40.010,[8] and have even stated that Section 4 of PERA "allows political subdivisions of the state to reject the act's provisions for conduct of labor relations and to substitute their own provisions." *Alaska Public Employees Ass'n v. Municipality of Anchorage*, 555 P.2d 552, 553 (Alaska 1976).

More importantly, we will not construe a statutory provision in a manner which is inconsistent with the express objective of that very legislation. The legislature expressly declared that the state policy of promoting harmonious and cooperative relations in public employment relations can best be effectuated by requiring public employers to bargain collectively with their employees.[9] It is, therefore, most difficult to construe the Act to prohibit local governments, which effectively rejected PERA, from engaging in collective bargaining under their own local ordinances. It is far more likely that Section 4 was added to PERA to give political subdivisions of the state the freedom to fashion their own labor ordinances and systems of collective bargaining. In sum, we find nothing in PERA or our decision in *Petersburg* to support the interpretation of Section 4 proffered by AMEA and thus hold that the Municipality and both of its predecessors had the option pursuant to Section 4 to reject coverage under PERA, and engage in collective bargaining on a local level.

## II

Alternatively, AMEA argues that even if Section 4's exemption option is available to governments which are already engaged in collective bargaining, neither the Municipality nor its predecessors effectively exercised their option to reject PERA. AMEA contends that the City acted prematurely, that GAAB acted to late, and that the Municipality acted in violation of its Municipal Charter.

The Municipality's Charter provides that the new government shall be the legal successor to the "rights, titles, actions, suits, franchises, contracts, and liabilities" of the former government. AMEA contends that the City, as the legal successor to the liabilities of its former governments, is subject to PERA by virtue of its predecessors' failure to enact timely exemptions. However, we need not determine what effect the new charter would have on the Municipality's ability to exercise its exemption had the former governments been bound by PERA, since we have concluded that both the City and GAAB did in fact validly opt out of PERA.

There is no merit to AMEA's claim that the City's resolution rejecting PERA was ineffective because it was adopted prior to the effective date of PERA. The City's resolution was passed during the 90 day interim period between the Act's enactment and its effective date. Article II, section 18 of the Alaska Constitution provides that laws passed by the legislature become effective 90 days after enactment. This delay gives those affected by the new legislation notice and an opportunity to prepare for changes which the law makes. It also provides an opportune time for those governments which choose to reject PERA to do so promptly and before their employees have commenced exercising their rights under the Act.

8. In *Kenai Peninsula Borough Sch. Dist. v. Kenai Peninsula Borough Sch. Dist. Classified Ass'n*, 590 P.2d 437 (Alaska 1979), we acknowledged that the right of non–certified school employees, who are not covered by PERA, arose from the school district's local labor relations policy.

9. AS 23.40.070.

The GAAB adopted its resolution rejecting PERA approximately seven months after the effective date of PERA. AMEA maintains that this exemption was not timely enacted and is thus invalid under *Petersburg*. As previously indicated, we think that whether a local government has exercised its option to reject PERA in a sufficiently timely fashion is best determined by looking at the circumstances of the individual case rather than setting an inflexible deadline. Although seven months may be considered untimely under some circumstances, there is nothing in the present case to indicate that GAAB acted less than conscientiously and diligently in acting to reject PERA. The Personal Director of GAAB contacted the state on several occasions between June, 1972, when the Act was enacted, and December, 1972, regarding the applicability of PERA and the procedures to be followed in rejecting it. He was never informed of any time limitations under Section 4. In January, 1973, the Mayor's recommendation was immediately considered at both a public meeting and special assembly meeting. There was general agreement that labor relations should be controlled on a local level, but that no action should be taken to reject PERA until a local ordinance was adopted.

The resolution rejecting PERA was passed immediately upon enactment of a local labor ordinance. This is clearly not a situation, as in *Petersburg*, where the City dealt with the question of the applicability of PERA at its leisure, while its employees were in the process of undertaking substantial activities in pursuit of their rights under the new Act. Therefore, we conclude that GAAB's exemption was timely and effectively enacted.

We hold that the Municipality is validly exempted from the requirements of PERA both as the legal successor of its predecessors' exemptions, and by virtue of its own independent act of rejecting PERA. Accordingly, the Municipality is free to formulate and apply its own labor relations practices and policies.

### III

Finally, AMEA argues that even if the Municipality is free to conduct its labor relations according to its own scheme, it cannot do so in a manner which conflicts with state policy as expressed in PERA. The Municipality's ordinance, AMEA maintains, is inconsistent with PERA's express policy in favor of mandatory collective bargaining insofar as it makes certain terms and conditions of employment non–negotiable.[10]

Although we agree that there is an inconsistency between the state and local law, "a municipal ordinance is not necessarily invalid in Alaska because it is inconsistent or in conflict with a state statute." *Jefferson v. State*, 527 P.2d 37, 43 (Alaska 1974). To hold that a local ordinance, adopted by a municipality which has effectively exempted itself from the requirements of PERA is invalid unless consistent in all respects with the provisions of PERA would basically make Section 4 a meaningless provision. In effect, AMEA is attempting to bring in through the back door the construction of Section 4 which we have already rejected. As long as Section 4 is still part of the Act we cannot conclude that all collective bargaining must be conducted in accordance with the requirements of PERA. Local governments which have validly rejected PERA are free to develop a local scheme of collective bargaining which varies from the state scheme as provided in PERA.

We hold that the Municipality's labor ordinance is valid, and affirm the judgment of the superior court in favor of the Municipality.

AFFIRMED.

---

10. The non negotiable items are longevity pay, holidays and leave. See note 2, *supra*.