STATE of Alaska, Petitioner,

v.

CITY OF PETERSBURG, Alaska, and International Brotherhood of Electrical Workers, Local 1547, AFL–CIO, Respondents.

No. 2341.

Supreme Court of Alaska.

July 24, 1975.

———◆———

Michael R. Peterson, Deputy Atty. Gen., Ronald W. Lorensen, Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for petitioner.

Robert B. Baker of Robertson, Monagle, Eastaugh & Bradley, Anchorage, for appellee City of Petersburg.

Robert M. Goldberg, Anchorage, for appellee Local 1547, IBEW.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

## OPINION

BOOCHEVER, Justice.

On June 7, 1972, the Governor of the State of Alaska approved the Public Employment Relations Act (hereinafter PERA) which conferred upon public employees the right to organize and to bargain collectively with their employers, and correspondingly required public employers to recognize collective bargaining units formed under the PERA.[1] The actual effective date of the PERA was September 5, 1972.[2] Of particular concern in this case is a provision whereby the legislative body of any political subdivision of the state may reject the Act thereby preventing its application to the public employees of that subdivision.[3] Specifically, we are confronted with the issue as to whether the Petersburg City Council could validly reject application of the Act more than six

months after it became effective,[4] and after the members of the Council had learned of the organizational activity of the City's power plant employees.

Early in 1973, employees of the City of Petersburg light and power plant began discussing the possibility of joining a union. As a result, on March 23 and 24, 1973, the entire eight-man work force signed cards authorizing the International Brotherhood of Electrical Workers Union Local 1547 (hereinafter IBEW) to act as their collective bargaining representative. A few nights later, the Petersburg City Council held a special meeting at which it passed Resolution 366–R purporting to exempt the City from the provisions of the PERA.[5] At the time of this meeting, the members of the City Council then present were well aware of the activities of the power plant employees concerning the formation of a collective bargaining unit.[6] In

1. AS 23.40.070(1) and (2).

2. SLA ch. 113 (1972).

3. SLA ch. 113, § 4 (1972) provides as follows:
 This Act is applicable to organized boroughs and political subdivisions of the state, home rule or otherwise, unless the legislative body of the political subdivision, by ordinance or resolution, rejects having its provisions apply.

4. In view of our holding in the instant case, we do not reach the issue of whether the City could act by means of passage of a resolution rather than by enactment of an ordinance.

5. Only four of six Council members were present at the meeting and only three voted for the resolution., Due to concern that procedural irregularities might have rendered the first resolution invalid, the Council met again on April 11, 1973 and passed a second resolution, 367–R, purportedly exempting the City of Petersburg from the applicability of the PERA.

6. This was indicated by testimony before the labor relations hearing officer. Paul Jones, an employee of the City testified that Councilman Ted Smith was aware that the employees of the power plant had signed pledge cards two or three days after the signing occurred. Doug Welde testified that on the day following the signing of the cards, Councilman Oines asked him "What's this I hear about the IBEW and the Union". Councilman

Ted Smith testified that he was aware prior to the March 29, 1973 meeting that the employees of the power plant had signed something indicating that they were interested in a union. Smith further testified that the resolution passed at the March 29 special meeting was in response to the organizational activities at the power plant. Councilman Oines testified to a similar motivation for this meeting and stated that the signing of the IBEW cards could have been discussed at the meeting. Councilman Fred Haltiner admitted that, prior to the March 29 meeting, he had been told that possibly all of the power plant employees had signed pledge cards. However, Ms. Jerry Van Bleck, the Clerk-Treasurer for the City of Petersburg, testified that at the March 29 meeting there was no mention of the power plant employees having signed authorization cards. In his decision, the hearing examiner deemed the following conclusively proved by the evidence:

The right of the City to exempt itself from the operation of the PERA had existed and was notice to the world since the Act was signed by the Governor in June of 1972; *but the City took no action to escape from the PERA until it learned that its eight power plant employees had signed pledge cards.* It acted five days later on March 29, 1973, at which time the City passed Resolution 366–R for the purpose of exempting itself from the operation of PERA. (emphasis added)

fact, Councilwoman Annie Taylor testified that, at the March 29 meeting and prior to the passage of Resolution 366–R, she told those members of the City Council then present that all of the power plant employees had signed pledge cards with the IBEW.

After an unsuccessful effort by the union to discuss the situation with the City Council, the matter was placed on the agenda for a meeting held on May 7, 1973. At that meeting, the Council refused to deal with the union, asserting that because of the passage of its resolution, it was not required to recognize the IBEW as the bargaining agent of the power plant employees. As a result, the union representative advised the Council that a strike vote would be held that night, and at 11:00 p. m., the employees notified the Mayor that they would go on strike at 6:00 the next morning. Notice was also given to the fire department and the hospital. At approximately 6:30 a. m. on May 8, the power plant was shut down. The three men involved in shutting down the power plant were immediately fired, and the other five were terminated when they refused to return to their jobs.

On May 16, 1973, the union sent a telegram to the Alaska Department of Labor alleging that the actions of the City in refusing to recognize the union and in firing the power plant employees constituted unfair labor practices under the PERA and requesting an immediate investigation. A formal accusation was filed on June 15, 1973. The Deputy Commissioner of the Department of Labor, on the basis of his preliminary investigation, found that there was probable cause to believe that the City had interfered with the rights of its employees to organize and had refused to bargain collectively in good faith with the IBEW, an organization which was the exclusive representative of employees in an appropriate unit. He concluded that such activities were in apparent violation of AS 23.40.110(a)(1) and (a)(5).[7]

The City of Petersburg filed a complaint in the superior court on June 29, 1973 (CA No. 73–201) seeking damages from the local IBEW and the employees involved in the strike. Additionally, the City alleged that the Department of Labor was without jurisdiction over this labor dispute, and that, therefore, it should be enjoined with regard to any further proceedings. On July 18, 1973, the superior court denied the City's motion for a temporary restraining order thereby allowing the Department to proceed with formal hearings on the accusation that the City had committed certain unfair labor practices.[8]

A hearing was held in Petersburg before Douglas L. Gregg, a hearing examiner of the state labor relations board, who, on January 14, 1974, issued an order requiring the City to recognize IBEW Local 1547 as the bargaining agent for the power plant employees. The hearing officer further ordered that no fines be imposed against any party and that all employees who were terminated be reinstated on their jobs at wage rates not less than those prevailing at the time they were terminated.

The City filed a notice of appeal to the superior court from this administrative order on January 24, 1974 once again raising the issue of the Department's jurisdiction

---

7. AS 23.40.110(a)(1) and (5) provide:
 (a) A public employer or his agent may not
 (1) interfere, restrain or coerce an employee in the exercise of his rights guaranteed in § 80 of this chapter;

. . . . .

 (5) refuse to bargain collectively in good faith with an organization which is the exclusive representative of employees in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

8. In denying the injunctive relief requested by the City, Judge Stewart reasoned that while there was a large degree of doubt as to the jurisdiction of the Department over this dispute, benefit might be derived from allowing the Department to deal with the question first, thereby taking advantage of whatever expertise it might possess, particularly since he felt there would not be a large or abnormal expense involved in allowing the administrative hearing to go forward.

over the matter (CA No. 74–30). The State of Alaska filed a notice of cross-appeal on February 1, 1974, claiming that the hearing officer's denial of back pay was an abuse of discretion.

Judge Stewart issued an interlocutory order in which he dealt with both the case originally filed in superior court by the City and the case there on appeal from the administrative hearing, these having been consolidated by stipulation of the parties in March 1974. He ordered that the City be given time for full consideration of whether to enact an ordinance for the purpose of rejecting application of the PERA to the City of Petersburg. The judge indicated that if the City properly rejected the application of the PERA by passage of an ordinance, a final judgment would be entered affirming that rejection. Judge Stewart also ordered that the City was not required to reinstate the employees involved in the strike but rather should offer them jobs to the extent available within the City's workforce at rates not less than those prevailing at the time of termination. No decision was made concerning the City's damages claim found in the original complaint filed with the superior court.

The State of Alaska on October 21, 1974, joined by the IBEW on October 28, filed a petition with this court seeking immediate review of the superior court's interlocutory order. The petition was denied.

■ A motion for reconsideration of the petition was filed with this court on December 5, 1974. By this time, the City had rejected the application of the PERA by

ordinance and, therefore, with respect to that portion of the case, the lower court order was final.[9] We have now decided to grant the petition for review limited to the question of whether a municipality can exempt itself from applicability of PERA at a time more than six months after its effective date and after it knows about organizational activity such as that which occurred here.[10]

We thus must determine the proper construction of the PERA exemption provision making the Act applicable to political subdivisions of the state, "home rule or otherwise, unless the legislative body of the political subdivision, by ordinance or resolution, rejects having its provisions apply". Of particular significance to the resolution of this issue is that portion of the statement of policies to be effectuated by the PERA which provides:

> The legislature declares that it is the public policy of the state to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government. These policies are to be effectuated by
>
> (1) recognizing the right of public employees to organize for the purpose of collective bargaining;
>
> (2) requiring public employers to negotiate with and enter into written agreements with employee organizations on matters of wages, hours, and other terms and conditions of employment . . . .[11]

---

9. For this reason, we initially decided to consider the petition for review as an appeal under authority of In re E.M.D., 490 P.2d 658, 661 (Alaska 1971), and Alaska R.App. P. 46 permitting relaxation of rules. Due, however, to the fact that there are a number of issues remaining to be resolved by the trial court, we have determined that it is preferable to consider this matter as a petition for review.

10. Review is granted in accordance with Alaska R.App.P. 23(d) because the order involves a controlling question of law as

to which there is substantial ground for difference of opinion, and an immediate decision may materially advance the ultimate termination of the litigation. Moreover, under Alaska R.App.P. 24(a)(1) and (2), the substance and importance of the order sought to be reviewed justify departure from normal appellate procedure and the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the need of a present and immediate review of the order.

11. AS 23.40.070.

Thus, the Act was intended to recognize the right of employees to organize for the purpose of collective bargaining and to require public employers to negotiate and enter into labor contracts with employee organizations. It is apparent that this purpose would be substantially frustrated if the City could wait until the employees elected to be represented by a specific union, and then could exempt itself from the requirements of the Act if that union was not favored by the City.[12] In effect, this would give the City the right to control the organization to be selected by the employees. In fact, that is exactly what was attempted by the Petersburg City Council when, at a meeting held on April 4, 1973, it was suggested to the employees, who had been requested to attend the meeting, that they form their own union rather than join the IBEW.

The critical point beyond which the right and power of the City to reject the Act become subordinated to the rights of the employees granted by the same legislation must be ascertained. We hold that the analysis must turn on both the substantiality of the organizational activities undertaken by the employees and the extent of the City's awareness of those activities. Prior to becoming aware of substantial organizational activity,[13] the City could have exempted itself from the applicability of the PERA without interfering with the right of the employees to organize. Rejection of the PERA after becoming aware of such activity constitutes a gross and impermissible interference with the employees'

freedom to choose which collective bargaining association should represent them.

That the City's prerogative to reject the Act is not to be used as a de facto veto against particular unions is evidenced by a comparison of the exemption provision set forth in SLA ch. 113, § 4 (1972) with the prior provision expressly repealed by the 1972 Act.[14] The earlier provision contained in AS 23.40.010 [15] specified that:

> The state or any political subdivision thereof including . . . [a] municipal corporation . . . may enter into union contracts with any labor organization whose members furnish services to the state or such political subdivision. . . . [P]*rovided however that nothing contained in this Act shall be construed to require the state or any political subdivisions thereof to enter into union contracts.* (emphasis added)

Under that provision, neither the state nor its political subdivisions were required to enter into union contracts. Prior to the 1972 Act, a municipality could wait until approached by a specific organization and still refuse to negotiate with or even recognize that union. The position advocated by the City in this case, that the exemption provision may be invoked at any time prior to an official demand by the particular organization of public employees for recognition, would constitute a reversion to the situation existing under the former statute which expressly entrusted the local government with complete authority to block attempts by public employees to or-

---

12. Even the City admits that the exemption provision cannot be read as placing no time limit on the action of political subdivisions. Otherwise, even after recognizing an employee organization, a City could exempt itself from the provisions of the Act and thereafter refuse to negotiate.

13. The City contends that determination of when it becomes aware of substantial organizational activity is too imprecise a standard. While admittedly difficult factual situations may be conjured up, courts are constantly required to make similarly difficult deter-

minations (as, for example, whether a party has exercised due care in a negligence case). *See also State v. Marathon Oil Co.*, 528 P.2d 293, 297–98 (Alaska 1974) ; *United States v. Ragen*, 314 U.S. 513, 523, 62 S.Ct. 374, 86 L.Ed. 383, 390 (1942). In any event, it is clear that substantial organizational activity has occurred when all of the employees of a particular unit of government have signed cards authorizing a specific union to represent them.

14. SLA ch. 113, § 5 (1972).

15. SLA ch. 108, § 1 (1959).

ganize even after significant steps toward organization had been taken.[16]

The 1972 Act repealed AS 23.40.010, and in lieu thereof, the Act was specifically made applicable to "political subdivisions of the state, home rule or otherwise, unless the legislative body of the political subdivision, by ordinance or resolution, rejects having its provisions apply". More than a nice semantical distinction may properly be made concerning the fact that the legislature provided for the PERA to be applicable to all political subdivisions of the state unless they rejected it rather than making the Act inapplicable unless affirmative steps are taken by these same subdivisions to adopt the Act. In its arguments, the City contends that adopting the position that the Act must be rejected prior to substantial organizational activity by public employees limits the freedom of the political subdivision to consider whether it wishes the PERA to apply to it. While no doubt true, it is equally evident from the wording of the exemption provision that this is precisely what the legislature intended. Had the legislature wished to bestow upon local governments the unlimited, unfettered discretion to deal with the question of the applicability of the PERA at their leisure, the exemption provision could have been written, as was the prior provision, to require affirmative action by the political subdivision to adopt the Act. It is not so written and the reason it is not so written is apparently to prevent precisely what the City argues for here. Under the present statute, applicability of the PERA is the rule, exemption the exception.

The City in its able presentation contended that the reason that AS 23.40.010 was repealed and Section 4 of SLA ch. 113 (1972) enacted was to render the terms of the Act mandatory as to the state and not for the purpose of changing the requirements with reference to labor negotiations by political subdivisions. It is true that the state was not furnished the option to exempt itself from the Act by the 1972 amendment. But if that had been the only change desired by the legislature, the former provision could have been re-enacted limited to political subdivisions only. The change in the language of the provision thus retains its significance as to political subdivisions, despite the elimination of the state from the exemption authorization.

The City also argues that small municipalities may not become aware of the terms of the PERA until after substantial organizational activity occurs, at which time they would have no reasonable opportunity to elect to be exempted. As noted at the outset, however, the Act, although signed into law on June 7, 1972, did not become effective until September 5, 1972. This interim period afforded adequate time for municipalities to become informed in most cases. In any event, it is apparent from the record that members of the Petersburg City Council were well aware of the terms of the Act. We are thus not required to pass on questions that might arise in the event that a small municipality was unaware of the statutory provisions.

 The City contends that under home rule provisions, its powers should be construed broadly, and the superior court based its decision on such a construction. Article X, § 1 of the Alaska Constitution provides in part that a liberal construction be given to the power of local government units, and Article X, § 11 specifies that a home rule borough may exercise all legislative powers not prohibited by law or charter. But here the Act was expressly made

---

16. The City of Petersburg seemingly concedes that once there has been an official demand for recognition by the public employee organization, the local governmental entity can no longer exempt itself from the PERA. As this case well illustrates, such a concession is rather meaningless. For all practical purposes, given the size of the communities in Alaska, the local governmental entities will be aware of the organizational activities well enough in advance of a demand for recognition to pass legislation, however hastily, to prevent the necessity of ever being forced to deal with an organization selected by employees when such organization is not satisfactory to the city.

applicable to home rule municipalities, and thus municipalities were impliedly prohibited from refusing to negotiate with organizations selected by employees unless the exemption was timely enacted.[17] Applying a liberal construction to the powers of local government cannot here override the express declaration of policy made a part of the PERA when coupled with considerations of the impact of the repeal of AS 23.40.010 and the different language used in the 1972 exemption provision, SLA ch. 113, § 4 (1972).[18]

The interlocutory order of the superior court is, therefore, overruled insofar as it permits the City to reject application of the PERA after becoming aware of the fact that all of the employees of the City power and light plant had authorized IBEW to represent them.[19]

Reversed and remanded.[20]

CONNOR and BURKE, JJ., dissenting separately.

CONNOR, Justice (dissenting).

I must respectfully dissent.

I am unable to read § 4, ch. 113, SLA 1972 as imposing any definite time limit upon organized boroughs and political subdivisions in their rejection of the coverage of the Public Employment Relations Act. If the legislature had intended that municipalities should act within some definite time, it would have been a simple matter to insert such a time limitation in the text of the statute. That the legislature did not do this is, to me, significant as a guide to interpreting the statute.

Several considerations buttress the conclusion which I have reached. For one thing, many small municipalities might not have been aware of the act and the need to expressly exempt themselves from its provisions until organizational activity actually occurred. Moreover, because the act stated no definite time limit, even those municipalities which were aware of the act might not have felt any sense of urgency in acting to exempt themselves before organizational activity among their employees began to occur. In these circumstances I have difficulty reading into the act an implied time limitation within which a municipality must exempt itself from the statutory coverage.

The majority opinion places emphasis on the contrast between the 1972 statute and the earlier provision contained in AS 23.-40.010,[1] which did not require the state or any political subdivisions to enter into union contracts, although the state or a political subdivision was permitted to enter into such contracts. On the contrary, it can be argued that if the political subdivisions of the state were under no previous obligation to enter into union contracts they might well read the 1972 act as continuing the

---

17. See *Jefferson v. State*, 527 P.2d 37, 43 (Alaska 1974).

18. The state and the IBEW alternatively argued that the trial court erred in the standard of review it applied to the decision of the Department of Labor, contending that the superior court's review of the Department's construction of SLA ch. 113, § 4 (1972) should have been limited to a determination of whether there existed a reasonable basis for the hearing examiner's decision. Here the question presented involved statutory interpretation about which courts have specialized knowledge and experience. Although we disagree with the conclusions reached on the merits by the trial judge, we hold that he did not err in substituting his independent judgment for that of the hearing examiner. The standard applied by the trial court was consistent with the guidelines set forth in *Kelly v. Zamarello*, 486 P.2d 906, 916–17 (Alaska 1971). The appropriate standards of *Kelly* should also be applied upon remand in reviewing other portions of the Department's decision.

19. Our decision is limited in its application to the municipal power plant employees. We do not pass on the question of whether the PERA shall now apply to all employees of the City of Petersburg.

20. The trial court may conduct such further proceedings as are necessary to resolve the remaining issues presented by the City of Petersburg complaint as well as by the appeal and cross-appeal from the order of the Department of Labor.

1. § 1, ch. 108, SLA 1959.

right not to bargain collectively with labor unions, and as conferring upon the political subdivisions an indefinite time limit within which to exempt themselves should they be approached by a labor organization with a demand for collective bargaining. This might well explain why a municipality would wait until organizational activity among its employees actually occurred before acting to exempt itself from the coverage of the 1972 statute.

A quite different and more serious problem would be presented if a city had entered into a collective bargaining agreement with its employees and then later attempted to exempt itself from the coverage of the statute, but that is not the case here.

For the reasons stated I would affirm the judgment of the superior court.

BURKE, Justice (dissenting).

I respectfully dissent. Article X, Section 11 of the Constitution of the State of Alaska provides: "A home rule borough or city may exercise all legislative powers not prohibited by law or by charter." Exercising a legislative power expressly conferred upon it by Section 4, Chapter 113, SLA 1972, the City of Petersburg, by resolution, rejected the application of the provisions of the Public Employment Relations Act. The majority now says that such action was improper since the city was aware of "substantial organizational activity" on the part of certain of its employees. I do not agree.

We are required to give a liberal construction to the powers of local government units.[1] With that principle in mind I can find nothing in the language of the Public Employment Relations Act, or its legislative history, justifying the implied limitation suggested by the majority. Particularly where, as here, there has been an express delegation of legislative authority I believe that this court should act with the utmost restraint in placing any restriction on the exercise of that authority by a home rule city. In this case the legislature's failure to impose a time limitation, in express terms, is simply too obvious to be without meaning. To me there is clear evidence of an intent that there be no such limitation.

But, even if some limitation was intended, as found by the majority, I oppose the adoption of a standard as uncertain as one based upon a political subdivision's awareness of "substantial organizational activity" on the part of its employees. What level or awareness is sufficient? Is actual knowledge required? If so, whose knowledge? Does the term "substantial organizational activity" refer to the number of employees involved or the level of their activity? Does it mean substantial in relation to the size of the political subdivision's total work force, the number of employees eligible for membership in a particular union, or those working at a particular facility, such as a municipal light and power plant?

Because of these and other questions I foresee grave difficulty in any future attempt to determine whether a political subdivision is entitled to avail itself of the protection afforded by Section 4, Chapter 113, SLA 1972. The only safe course of action for such an entity would appear to be the immediate enactment of an ordinance or resolution rejecting the provisions of the Public Employment Relations Act.

1. Article X, Section 1, Constitution of the State of Alaska.