Herbert Kuss, Deputy City Atty. and Charles M. Gibson, City Atty., Fairbanks, for appellant.

James M. Hackett, Fairbanks, for appellee AFL–CIO Crafts Council.

James A. Witt, Anchorage, for appellee Teamsters Local 959.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

**CITY OF FAIRBANKS, Appellant,**

v.

**FAIRBANKS AFL–CIO CRAFTS COUNCIL, Appellee.**

**CITY OF FAIRBANKS, Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA GENERAL TEAMSTERS LOCAL 959, Appellee.**

**Nos. 4950, 5011.**

Supreme Court of Alaska.

Feb. 6, 1981.

## OPINION

CONNOR, Justice.

The overall issue in this appeal is whether the City of Fairbanks [the City] is obligated to negotiate with the appellee unions prior to making any changes in terms and conditions of employment affecting employees represented by appellees. The superior court held that the City had forfeited its 1972 exemption from the Public Employment Relations Act [PERA][1] by its subsequent dealings with appellees, and thus has a statutory duty to bargain with employee

1. AS 23.40.070–.260.

organizations under the provisions of PERA.[2] We hold that the City has not waived its express exemption from PERA. Thus we reverse.

The facts are essentially undisputed. In June of 1972, PERA was signed into law by the Governor to be effective September 5, 1972. Pursuant to section 4 of the Act,[3] the City of Fairbanks by resolution rejected the provisions of PERA on August 7, 1972. One year later the City officially recognized the Fairbanks Joint Crafts Council as the bargaining representative for the City's unrepresented employees.

Since 1974 the City and the Crafts Council have negotiated and executed three consecutive collective bargaining agreements. Prior to the negotiation of the third agreement, the City realigned its employees into different collective bargaining units and conducted an election to determine union representation among the newly aligned units. As a result of this election, the City recognized and entered into collective bargaining agreements with both appellees, the AFL–CIO Crafts Council and the Teamsters Local 959 as bargaining representatives for certain of its employees.

The third collective bargaining agreement executed with the Crafts Council gave the employees the option of participating in either the Public Employees Retirement System [PERS] or the union retirement plan. In June, 1979, approximately twenty employee members of the Crafts Council exercised their option to belong to the union pension plan. The City made employer contributions to the union plan for the two pay periods in the month of June. As of July 1, 1979, the City put into effect a new personnel ordinance which makes participation in the state pension system mandatory and ceased making contributions to the union pension plan for those employees who had previously opted into the union plan.

Since the termination of the last collective bargaining agreement with the Crafts Council on July 1, 1979, the City has refused to negotiate with the Council over the disputed pension plan or any other terms or conditions of employment.[4] The City has also declined all requests and demands from the Council to extend the duration of the old collective bargaining agreement, or to enter into a new agreement. Likewise, the City has refused to recognize or negotiate with the Teamsters Local 959 past the expiration date of their last collective bargaining agreement.

The Crafts Council filed a complaint against the City in the superior court on August 7, 1979, seeking to enjoin the City from refusing to negotiate under the provisions of PERA.[5] The superior court granted the injunction in favor of the plaintiff, finding that the City had waived its 1972 exemption by continuing to recognize and deal with the Crafts Council and ordered the City to negotiate in good faith with the Council under the provisions of PERA.[6]

2. Section 70(2) of PERA requires public employers "to negotiate with and enter into written agreements with employee organizations on matters of wages, hours, and other terms and conditions of employment."

3. Section 4 provides:
   "This Act is applicable to organized boroughs and political subdivisions of the state, home rule or otherwise, unless the legislative body of the political subdivision, by ordinance or resolution, rejects having its provisions apply."

4. Under the new ordinance, the City manager has the authority but no duty to negotiate with representatives of employee organizations. Fbks.Gen.Code Ord. § 2.505(4).

5. The Teamsters Local 959 also filed a complaint against the City in the superior court, but shortly thereafter stipulated with the City that the decision rendered in the Crafts Council case would be adopted as the law of the case conditioned on the right to appeal the final order. Local 959 and the Craft Council's appeals were consolidated by this court.

6. Judge Blair indicated that his ruling was based on the earlier decision of Superior Court Judge Hodges in *Fairbanks Firefighters Union v. City of Fairbanks*. Judge Hodges had ruled that the City had waived its exemption from PERA by recognizing and dealing with the Firefighters Union, and was thus bound to negotiate in good faith with the union under the provisions of PERA. Judge Hodges' decision reasons: "Under the rationale of the *Petersburg* case, the legislative intent of PERA would be frustrated to now permit the City to reassert its exemption." Judge Blair made it clear on

The court further held that the City's new personnel ordinance is void insofar as it "purports to supplant the provisions of PERA or to violate the provisions of Article XII, Section 7 of the Alaska Constitution."[7] The propriety of the superior court's ruling that the City is bound by the provision of PERA despite its explicit exemption by resolution is the sole issue raised by appellant on appeal.

The court's ruling that the City has forfeited its exemption by continuing to recognize and negotiate with appellees effectively prevents a public employer which chooses to reject coverage under PERA from voluntarily engaging in collective bargaining with representatives of its employees. We have recently rejected a similar interpretation of PERA's exemption provision proffered by the public employee's organization in *Anchorage Municipal Employees Association v. Municipality of Anchorage*, 618 P.2d 575 (Alaska 1980). As we indicated in that case, there is nothing in the language of PERA or its legislative history to suggest that the legislature intended to preclude local governments which have validly exempted themselves from coverage under the Act from thereafter voluntarily engaging in collective bargaining with employee organizations. Nor does our decision in *State v. City of Petersburg*, 538 P.2d 263 (Alaska 1975), support such an interpretation. In *Petersburg*, we held that a public

employer may not opt out of PERA in order to avoid negotiating with certain unions once its employees have commenced organizational activities in reliance on the rights granted to them by the Act. *Id.* at 267. In the present case, unlike *Petersburg*, the City refuses to negotiate with appellees years after the exemption was passed, and there is no suggestion that the City rejected PERA for any other purpose than to formulate its own personnel procedures. In fact, for almost eight years after the exemption, the City conducted its labor relations consistently with the objective of PERA, by voluntarily entering into three consecutive collective bargaining agreements with appellees. Ironically, it is precisely because of this history of dealings with appellees that the superior court found that the City had forfeited its exemption.

Sudden refusal to negotiate with a union after a history of dealings with them is bound to cause disharmony in public employment relations and frustrate the objectives of PERA.[8] We do not understand, however, how such conduct voids a validly executed exemption, thus making the provisions of PERA applicable. It might be a different matter if the City, despite its exemption, had dealt with appellees as if it were covered by PERA throughout the years, thereby encouraging its employees to rely on the continued protection of the Act.

the record that he felt bound by this ruling although in his personal opinion "the City exempted itself in 1972 and once exempted doesn't fall under PERA unless it specifically forfeits its exemption."

**7.** Article XII, § 7 of the Alaska Constitution provides:

"*Retirement Systems.* Membership in employee retirement systems of the State or its political subdivisions shall constitute a contractual relationship. Accrued benefits of these systems shall not be diminished or impaired."

Appellants have not objected to this part of the court's order on appeal. Generally, we would not disturb any portion of a judgment not objected to on appeal. *See Jefferson v. State*, 527 P.2d 37, 39 n. 4 (Alaska 1974). Here, however, it is unclear whether the court actually held the City ordinance void as violative of this consti-

tutional provision. There is no mention of Art. XII, § 7 in the court's findings and conclusions, and the order merely states that the ordinance is void insofar as it "purports" to violate that section of the Alaska Constitution. Because of this ambiguity, we have decided that this portion of the judgment should not be upheld despite the appellant's failure to assign error.

**8.** A municipal ordinance is not necessarily invalid because it is inconsistent or in conflict with a state statute. *Jefferson v. State*, 527 P.2d 37, 43 (Alaska 1974). In *Anchorage Municipal Employees Ass'n v. Municipality of Anchorage*, 618 P.2d 575, 585 (Alaska 1980), we rejected the contention that a municipality, which has effectively exempted itself by local ordinance from the requirements must conduct its labor relations in a manner consistent with the provisions of PERA.

Here, however, all dealings with appellees have been through local ordinance and resolution, and there is no evidence to suggest that the City led its employees into believing that they were covered by PERA or to rely on such coverage.[9]

To uphold the superior court's decision would lead to the anomalous result that a local government which rejects PERA but continues to negotiate with representatives of its employees under its own local ordinances in a manner consistent with PERA, forfeits its exemptions and is thereafter bound by the specific requirements of PERA. We do not think that this was what the legislature intended when it included Section 4 in PERA, and thus we reverse the order of the superior court.[10]

REVERSED.

BOOCHEVER, J., not participating.

---

9. The City never sought state certification of union elections or processed grievances through the state procedures, and the Council concedes that this is the first time that it has filed an unfair labor practice with the State.

10. Appellees have advanced a number of additional grounds for affirming the superior court's order. We are unpersuaded as to some of these, and find others lacking in merit.

First, it is contended that under the city charter the city council could only exempt itself by ordinance, not by resolution. But the statute, which governs here, permits either an ordinance or resolution as the effective means of obtaining an exemption. Second, appellees rely on a number of cases under the National Labor Relations Act concerning the duty to bargain. That statute is simply not applicable here. Third, appellees allude to an impairment of the constitutionally guaranteed right to free-

dom of association, but this point is not adequately raised in the proceedings below. Fourth, it is argued that the city was under a duty of mandatory bargaining, and a duty to adopt procedural safeguards to protect the right of collective bargaining. Both of these arguments are based on a statutory duty to bargain, which we have determined to be absent here. The arguments, therefore, are to no avail.

Lastly, it is claimed that because the City continued to negotiate with one union, the International Brotherhood of Electrical Workers, after the enactment of Ordinance No. 3786, the City acted unconstitutionally to deny equal rights, opportunities and protection to employees represented by the Crafts Council. We are not persuaded that such an unconstitutional action has been made out.