**339**

CITY OF FAIRBANKS, Appellant,

v.

FAIRBANKS FIREFIGHTERS UNION,
David Lee Rockney, Warren B.
Cummings, Appellees.

File No. 4925.

Supreme Court of Alaska.

Feb. 13, 1981.

As Amended on Denial of Rehearing
April 6, 1981.

Brett M. Wood, Deputy City Atty., Fairbanks, for appellant.

Richard D. Savell, Fairbanks, for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

OPINION

CONNOR, Justice.

In this appeal arising from the interpretation of a collective bargaining agreement, we are asked to determine the applicability of the Fairbanks Personnel Ordinance [1] as between the City of Fairbanks and the Fairbanks Firefighters Union and whether the city was in breach of the bargaining agreement with the union for refusing to negotiate. The superior court held that the personnel ordinance is void as between the city and the union and that the city was in breach of the agreement for refusing to negotiate with the union. The court then issued a permanent injunction disallowing the refusal. We hold that the Fairbanks Personnel Ordinance is valid as between the city and the union but that the city was in breach of the bargaining agreement.

---

1. F.G.C. §§ 2.501–2.523 (as revised on June 13, 1979 by Fairbanks City Council Ordinance No. 3786).

In June of 1972, the Public Employment Relations Act (PERA), AS 23.40.070–.260, was signed into law by the Governor to be effective September 5, 1972. Pursuant to section 4 of the Act,[2] the city by Resolution No. 859 rejected the provisions of PERA on August 7, 1972. Almost five years later, the city council passed Resolution No. 1321, on April 25, 1977, instructing the city clerk to hold an election among fire department union position employees to determine whether the union should be recognized as their bargaining agent. The resolution specified that if the vote was affirmative, the union would be recognized. The vote favored the union; consequently the city and the union negotiated a working agreement, effective April 1, 1977. Section 1.1 of the agreement specified that the contract would terminate June 30, 1979. Ordinance No. 3659, approving the bargaining agreement, continued the agreement's existence "from June 30th to June 30th of each year thereafter unless modified, changed or terminated pursuant to notice provided in said agreement." On March 29, 1979, the union's business agent notified the city that the union wished to change the bargaining agreement.[3] The city failed to respond to the notice.

On May 21, 1979, the city council approved the personnel ordinance at issue here. The ordinance differed from the bargaining agreement in probationary periods, sick leave, annual leave, and other areas. On June 29, 1979, the city notified the union that it no longer recognized the agreement and that the fire department members were covered by the ordinance. A hearing on the motion for a preliminary injunction filed by the union was held on August 3rd. On October 17th, the superior court granted a permanent injunction against the city, prohibiting it from enforcing the May 1979 personnel ordinance against the firefighters' union.

## I

■ The first issue is whether the city waived its PERA exemption by negotiating with the union, thus forfeiting the authority to enact its own personnel guidelines. Our decision in *City of Fairbanks v. Fairbanks AFL–CIO Crafts Council*, 616 P.2d 18, (Alaska 1981), is controlling. *See Anchorage Municipal Employees Association v. Municipality of Anchorage*, 618 P.2d 575, 579–80 (Alaska 1980). Consistent with those opinions, we hold that the city has not waived its PERA exemption. The personnel ordinance is valid and not in conflict with PERA.

## II

■ The second issue is whether the city breached its agreement with the union by failing to negotiate after the union gave notice of its desire to change the bargaining agreement. By approving the bargaining agreement in Ordinance No. 3659 in April of 1977, that agreement was incorporated into the ordinance by reference. Fairbanks General Code section 1.104 states that "[o]rdinances repealed remain in force ... for the preservation of all rights and remedies existing by them and so far as they may apply, to any ... contract ... already affected by them."[4] Section 1.2 of the

---

2. Section 4 provides:
   "This Act is applicable to organized boroughs and political subdivisions of the state, home rule or otherwise, unless the legislative body of the political subdivision, by ordinance or resolution, rejects having its provisions apply."
   Section 4, ch. 113 SLA 1972.

3. This notice followed the instructions of sec. 1.2 of the bargaining agreement:
   "Either party desiring a change or modification in this agreement shall notify the other party in writing at least ninety (90) days prior to June 30, 1979."

4. The personnel ordinance did not expressly repeal Ordinance No. 3659 which approved the bargaining agreement. The rule for determining statutory repeal by implication is stated in *Peter v. State*, 531 P.2d 1263, 1268 (Alaska 1975): "We shall look to the purpose indicated by the legislature in passage of an act in our effort to determine whether the new enactment is intended to repeal a prior one." (cited with approval in *Hafling v. Inlandboatmen's Union*, 585 P.2d 870, 876 n.20 (Alaska 1978)). The comprehensiveness of the personnel ordinance is indicative of the intent to repeal all previous ordinances approving different bargaining agreements. *See Peter*, 531 P.2d at 1267.

agreement requires written notice by the party desiring change or modification at least 90 days prior to June 30, 1979, the termination date specified in section 1.1. Section 1.2 continued: "Upon receipt of such notice, negotiations shall begin within fifteen (15) days." The city council, having enacted the ordinance approving and incorporating these provisions, binds the municipal authorities to them. *City of Las Vegas v. Cragin Industries, Inc.*, 86 Nev. 933, 478 P.2d 585, 589 (Nev.1970); *see* 10 E. McQuillin, Municipal Corporations § 29.03, at 218 (3d ed. 1966). Although the union's business agent notified the city on March 29, 1977, of the union's wish to change the bargaining agreement, the city did not begin negotiations. The enactment of the personnel ordinance of May 21, 1979, did not release the city from its obligations under the bargaining agreement. The city, in failing to negotiate with the union after proper notice, breached the bargaining agreement.

Consistent with Fairbanks General Code section 1.104, the city is bound by the provisions of the bargaining agreement until termination.[5] The proper method of ascertaining the date of termination for this agreement is a question of contract interpretation. Section 1.1 of the agreement establishes the term as running from April 1, 1977, to June 30, 1979. This is repeated by Ordinance No. 3659, but the ordinance adds the provision that the agreement "shall continue in full force and effect from June 30th to June 30th of each year thereafter unless modified, changed or terminated pursuant to notice provided in said agreement." Section 1.2 of the agreement provides that "[e]ither party desiring a change or modification in this agreement shall notify the other party in writing at least ninety (90)

days prior to June 30, 1979." There is no express provision for termination in the agreement although the reference to notice upon termination in the accompanying ordinance clearly indicates the city's intent that there be some type of notice.

In *Anchorage Borough Education Association v. Greater Anchorage Area Borough*, 1 Pub. Bargaining Cas. ¶ 10,066, No. 72–2263 (Alaska Super., 3d Dist., Anchorage, Oct. 4, 1972), the court considered a bargaining agreement involving a similar failure to specify the proper notice. The court held that "[f]ailure to specify any particular form of notice in an agreement gives rise to the implication that any reasonable method is sufficient." We find the superior court's approach persuasive: Notice must be both reasonable and timely.

In the *Anchorage Borough Education Association* dispute, a press release was not reasonable notice because of the contract's importance to public welfare. In the present case the passage of the personnel ordinance was the notice of termination. Since all persons are presumed to know the contents of the laws, *Ferrell v. Baxter*, 484 P.2d 250, 265 (Alaska 1971); 5 E. McQuillin, Municipal Corporations § 15.28, at 105 (3d ed. 1969); notice by ordinance is not unreasonable. Although the form of notice may have been adequate, it must also be timely. In *Anchorage Borough Education Association* there was a contract clause providing that negotiation requests be submitted before December 1. The court reasoned that notice to terminate would not be timely unless it was given sufficiently in advance to allow time for the nonterminating party to request negotiations. In the case at bar notice, *i. e.*, the passage of the ordinance, was given on May 21, 1979. The deadline for notice of modification or change was 90

Thus, the personnel ordinance repealed, by implication, the ordinance approving the bargaining agreement.

5. After proper termination, the union has no right to insist that the city negotiate with it absent a municipal ordinance or state statute imposing a duty to bargain. We have already discussed the inapplicability of PERA. Although the National Labor Relations Act,

§ 8(a)(5), 29 U.S.C. § 158(a)(5) (1976), requires employers to bargain collectively with employee representatives, the Act does not apply to public employees. Further, there is no common law duty to bargain collectively. *Newport News Firefighters Ass'n Local 794 v. City of Newport News*, 339 F.Supp. 13, 16 (E.D.Va. 1972); *Atkins v. City of Charlotte*, 296 F.Supp. 1068, 1077 (W.D.N.C.1969).

days prior to June 30, 1979. The May 21 notice was less than 90 days in advance; thus, because it was not timely,[6] the notice was unreasonable.

We hold that the parties were bound by the provisions of the agreement negotiated between the city and the union, from April 1, 1977, until June 30, 1981. Passage of the personnel ordinance on May 21, 1979, amounted to implied notice by the city of its intention to terminate the agreement on June 30, 1980.

The injunction issued below is modified insofar as it is inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART.

BOOCHEVER, J., not participating.

---

6. The request for negotiations, even in view of the personnel ordinance, would not necessarily be a futile gesture. The ordinance does not prohibit the city from negotiating. On the contrary, Fairbanks General Code § 2.505 gives the city manager "the authority to negotiate with representatives of employee organizations representing city employees . . . ." During negotiations, the provisions of the personnel ordinance established the guidelines to be achieved, *id.*, but do not set the specific terms of a contract.