**CITY AND BOROUGH OF
SITKA, Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
UNION 1547, Appellee.**

No. 6116.

Supreme Court of Alaska.

Oct. 22, 1982.

Peter Hallgren, Sitka, for appellant.

Paul S. Wilcox and M. Gregory Oczkus, Law Office of Paul S. Wilcox, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ., and DIMOND, Senior Justice.*

COMPTON, Justice.

This appeal raises the issue of whether the refusal of the City and Borough of Sitka (Sitka) to recognize the union selected as a bargaining agent by its electrical department employees violates Alaska's Public Employment Relations Act (PERA) and Sitka's Municipal Charter. The superior court ruled that Sitka failed to effectively opt out of PERA and that Sitka's personnel policy ordinance violated its Charter. The court ordered Sitka to recognize and negotiate with the electrical department's elected representative. We hold that Sitka validly opted out of PERA, but violated its Charter.

---

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 11, of the Constitution of Alaska, and Alaska R.Admin.P. 23(a).

1. Section 4 reads: "This Act is applicable to organized boroughs and political subdivisions of the state, home rule or otherwise, unless the legislative body of the political subdivision, by ordinance or resolution, rejects having its provisions apply." Ch. 113, § 4, SLA 1972.

2. Sitka, Alaska, Charter § 3.05 provides in full:

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are essentially undisputed. In June 1972, the State of Alaska enacted the Public Employment Relations Act (PERA). AS 23.40.070.–.260. PERA confers upon public employees the right to organize and to bargain collectively with their employers. Section 4 of PERA permits the legislative body of any political subdivision of the state to reject the Act, thereby preventing its application to the public employees of that subdivision.[1] PERA became effective on September 5, 1972.

In December 1971, appellant Sitka was unified as a single home rule municipality. At that time, a charter was adopted that included a section requiring the Sitka Assembly to "adopt by ordinance an administrative code which shall include provisions for ... recognizing employee organizations."[2]

Pursuant to the Charter, Sitka enacted a personnel policy ordinance in May of 1972.[3] The ordinance established an employees' negotiating committee. Essentially, each municipal department elects one representative to the committee. The employees' negotiating committee meets with a management committee to discuss various subjects including work conditions, benefits and salaries. On July 10, 1973, the Sitka Assembly passed Ordinance 73–93, which purports to exempt the municipality from PERA pursuant to section 4 of the Act.

Appellee is a labor organization affiliated with the International Brotherhood of Electrical Workers, AFL–CIO (IBEW). Organizational efforts by the IBEW on behalf of

---

The Assembly shall adopt by ordinance an administrative code which shall include provisions for establishing qualifications for employment and a merit system; establishing a pay plan for all municipal positions; permitting appeal; recognizing employee organizations; protecting municipal employees from arbitrary discharge and safeguarding against nepotism.

3. Sitka, Alaska, Ordinance No. 72–13 (May 9, 1972).

the Sitka electrical department employees extend back to the early 1960's. Thereafter, the employees were periodically in contact with the union, which in turn approached city leaders on several occasions for the purpose of obtaining union recognition. Sometime in 1972, all the electrical department employees signed union authorization cards.[4] Sitka officials were aware of the electrical employees' desire and intent to have the IBEW represent them for purposes of collective bargaining prior to July 10, 1973. Sitka has consistently refused, however, to recognize the IBEW as a bargaining agent for the Sitka electrical department employees.

On August 24, 1977, the IBEW filed a suit alleging that Sitka Ordinance 73–93 is invalid and that Sitka Charter section 3.05 requires recognition of the union as the bargaining representative of Sitka's electrical department employees. Sitka's answer denied the allegations and raised four affirmative defenses. After the IBEW's motion for summary judgment was denied, the case proceeded to trial on August 28, 1979. The superior court ruled in favor of the IBEW, granting them the right to engage in organizational activities with the employees of the electrical department and requiring the City to recognize and negotiate with the representative elected by a majority of the electrical department employees.

Sitka appeals from this decision.

## II. PERA REJECTION

■ We first address whether Sitka Ordinance 73–93 effectively rejected PERA. The superior court, citing *State v. City of Petersburg*, 538 P.2d 263 (Alaska 1975), held that Sitka's PERA exemption was ineffec-

tive because it was enacted too late and thus interfered with substantial organizational activities by the electrical department employees.

In *Petersburg*, we held that the City could not exempt itself from PERA after becoming aware of the fact that all municipal power plant employees had authorized a particular union to represent them.[5] "[T]he substantiality of the organizational activities undertaken by the employees and the extent of the City's awareness of those activities" identify "[t]he critical point beyond which the right and power of the City to reject the Act become subordinated to the rights of the employees." 538 P.2d at 267.

We have warned, however, that the *Petersburg* rule is limited to its factual setting. *Anchorage Municipal Employees Association v. Municipality of Anchorage*, 618 P.2d 575, 579 (Alaska 1980). To ascertain whether a PERA exemption is motivated by proper considerations, we examine the purpose and intent of actions taken by the employees and by the municipality. *See City of Fairbanks v. Fairbanks Firefighters Union*, 623 P.2d 339 (Alaska 1981); *City of Fairbanks v. Fairbanks AFL–CIO Crafts Council*, 623 P.2d 321 (Alaska 1981); *Anchorage Municipal Employees Association v. Municipality of Anchorage*, 618 P.2d 575 (Alaska 1980).

It is uncontroverted that Sitka was aware of the IBEW's organizational attempts prior to passage of the exemption ordinance. Contrary to the position advocated by the IBEW, such knowledge is not in itself sufficient to invoke the *Petersburg* rule. In *City of Fairbanks v. Fairbanks AFL–CIO Crafts Council*, we interpreted *Petersburg* as holding that "a public employer may not

---

4. The record is uncertain as to exactly when the union authorization cards were signed. At the trial the most precise time estimate came from the electrical department superintendent. He testified that the union cards were signed in the spring of 1972. This evidence indicates that the cards were probably signed prior to PERA's enactment in July of 1972.

5. The facts in *Petersburg* are as follows: Employees of the City's light and power plant signed cards authorizing the IBEW to act as

their collective bargaining agent in March of 1973. All preliminary discussions concerning the possibility of unionization had taken place earlier in the same year, thus occurring after the effective date of PERA. Five days later, the Petersburg City Council held a special meeting at which it passed a resolution purporting to exempt the City from the provisions of PERA. The council was aware of the power plant employees' union activities prior to passing the resolution. 538 P.2d at 264–65.

opt out of PERA in order to avoid negotiating with certain unions once its employees have commenced organizational activities in reliance on the rights granted to them by the Act." 623 P.2d at 323. The timing of the organizational activities of the Petersburg power plant employees indicated a reliance on PERA rights. The situation here, however, is different. The Sitka electrical department employees had pursued unionization since the early 1960's, long before the enactment of PERA. Although the superior court found that all the electrical department employees signed union authorization cards sometime in 1972, there is no evidence in the record of any organizational activities occurring between PERA's effective date, September 5, 1972, and the passage of the exemption ordinance, July 10, 1973. Thus, in contrast to *Petersburg,* the employees in Sitka were not acting in reliance on rights granted them by PERA.

Nor is the *Petersburg* rule invoked when a municipality rejects PERA "solely for the purpose of retaining local control over their labor relations, and with the clear intent of continuing collective bargaining rather than to interfere with established employee rights." *Anchorage Municipal Employees Association v. Municipality of Anchorage,* 618 P.2d at 579. This provides an additional ground for distinguishing the present case from *Petersburg.* In contrast to the *Petersburg* factual setting,[6] there are no factual findings in the present case that the Sitka PERA exemption ordinance was passed with an intent to frustrate employee rights. Sitka has consistently refused to recognize the IBEW, both before and after PERA. Passage of the personnel policy in May of 1972 reveals Sitka's intent to control its own public labor relations. Sitka's purpose in opting out of PERA was to retain local control through its personnel policy rather than to interfere with employee rights.[7]

We hold that Sitka Ordinance 73-93 validly exempted Sitka from the requirements of PERA.[8]

## III. SITKA CHARTER

The second issue is whether the creation of an employees' negotiating committee satisfies the mandate set forth in Sitka Charter section 3.05 of "recognizing employee organizations." The personnel policy ordinance defines the structure of the negotiating committee, but also affords municipal employees the opportunity to elect a department representative. Sitka argues that by enacting the personnel policy ordinance, it fulfilled its Charter obligation. In contrast, the IBEW argues that the Charter requires Sitka to recognize the IBEW as bargaining agent for the municipality's electrical department. In our view, the dispositive question centers on the intentions of the framers of the Sitka Charter in using the word "recognizing."

In the construction of municipal charters, we are guided by the rules of

---

**6.** In *Petersburg,* there was no indication that the City Council passed the PERA exemption ordinance in order to retain local control over labor relations. Nor was there any evidence that collective bargaining had ever transpired between the City and the power plant workers. The fact that the City Council's exemption ordinance was passed within five days after union authorization cards were signed evidenced an intent to interfere with the rights of employees. 638 P.2d at 264–67.

**7.** Sitka, Alaska, Ordinance No. 73–93 (July 10, 1973) provides in part:
 3. *Purpose*
 (a) This municipality already carries out collective bargaining procedures with its public employees.

(b) The collective bargaining procedures have proved to be workable and satisfactory.
 (c) This municipality has, by ordinance, provided personnel rules and regulations under which merit system principles are maintained among its public employees.

**8.** The fact that Sitka's PERA exemption ordinance was passed three months after Petersburg's unsuccessful attempt does not affect our holding. *Petersburg* does not set a limited time period within which rejection of PERA must take place. Instead, the circumstances of each case must be examined individually. *Anchorage Municipal Employees Ass'n v. Municipality of Anchorage,* 618 P.2d at 581.

statutory construction.[9] Although the starting point in construing a statute is the language of the statute itself, reference to legislative history may provide insight that is helpful in determining the statute's meaning. *North Slope Borough v. Sohio Petroleum Corp.*, 585 P.2d 534, 540 (Alaska 1978).[10] We, therefore, consider the relevant history of Sitka Charter section 3.05.[11]

The legislative history surrounding the adoption of Sitka Charter section 3.05 is quite sparse. Section 3.05 was apparently modeled after a similar provision in a 1970 proposed version of the Anchorage Municipal Charter. Among other changes, the Sitka Charter Commission substituted the phrase "recognizing employee organizations" for the phrase "recognizing collective bargaining." There is no reference in the tapes of the meetings of the Charter Commission to explain what was intended by this particular revision. When drafting another charter provision, relating to the status of employees during the transition to a home rule municipality, the Charter Commission considered a section in the proposed Anchorage Municipal Code that referred to collective bargaining and, again, the Commission deleted the reference to collective bargaining in the Charter. The tapes of the July 15, 1977, meeting of the Charter Commission indicate that the deletion was not because of any hostility toward the prospect of collective bargaining in the future. Rather, the Charter Commission determined that it was unnecessary to include the reference to maintain any collective bargaining agreements during the transitional period because at that time there

were no collective bargaining agreements in effect. When discussing the matter, the Charter Commission addressed the relationship between "benefit bargaining" and a provision in the administrative code that apparently required the City to recognize an employee organization:

> Shuler: You don't have a bargain agreement, unless you have a signed agreement with someone.
>
> Wright: Not necessarily.
>
> (Voice): Are you thinking of bargaining rights?
>
> Wright: Yes.
>
> Fager: Our administrative code doesn't say, except just to say recognize an organization, it doesn't say anything about benefit bargaining.
>
> Grussendorf: *That's all you have to do, just recognize the existence of the organization.*

Transcript of Sitka Charter Commission (July 15, 1977) (emphasis added).

Although the colloquy quoted above was not directly in reference to the meaning of Charter section 3.05, it offers a valuable insight into the probable intent of the Charter Commission. We therefore reject the IBEW's contention that the phrase "recognizing employee organizations" should be interpreted to require Sitka to engage in collective bargaining with respect to the terms and conditions of employment of municipal employees. "Collective bargaining" is a term of art in labor law that harbors the concomitant duty to bargain

**9.** 2 E. McQuillan, The Law of Municipal Corporations § 9.22 at 685 (3d ed. 1979).

**10.** As Judge Learned Hand noted in *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.), *aff'd*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945):
Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and

imaginative discovery is the surest guide to their meaning.

**11.** At oral argument, Sitka argued that the enactment of the personnel policy ordinance by the assembly, which included members of the Charter Commission, was a contemporaneous practical construction of the Charter that should be considered controlling. Although a contemporaneous construction may provide some evidence of the meaning of the Charter, it is not conclusive, especially if it conflicts with a literal reading of the language used and the history of the enactment of the Charter.

in good faith.[12] We recognized in *Kenai Peninsula Borough School District v. Kenai Peninsula Education Association,* 572 P.2d 416 (Alaska 1977), that the good faith standard of collective bargaining may affect the substantive position of the bargaining parties. We stated:

> While the good faith standard of collective bargaining does not compel either party to make concessions, intransigent positions, adopted in an effort to avoid any agreement, are disfavored. Thus a legal determination that a matter is subject to good faith collective bargaining may narrow the policy-making powers of an employer by curtailing any absolute directives on his part.

572 P.2d at 418–19 (footnote omitted). This consequence raises particularly sensitive concerns when collective bargaining in the public sector is at issue because the public employer who is obligated to engage in good faith bargaining relinquishes some of the essential attributes of sovereignty. Moreover, we also recognized in *Kenai Peninsula Education Association* that collective bargaining in the public sector is fundamentally a political process:

> "Finally, decisionmaking by a public employer is above all a political process. The officials who represent the public employer are ultimately responsible to the electorate, which for this purpose can be viewed as comprising three overlapping classes of voters—taxpayers, users of particular government services, and government employees. Through exercise of their political influence as part of the electorate, the employees have the opportunity to affect the decisions of government representatives who sit on the other side of the bargaining table."

572 P.2d at 419, *quoting Abood v. Detroit Board of Education,* 431 U.S. 209, 228, 97 S.Ct. 1782, 1796, 52 L.Ed.2d 261, 280 (1977).

 Mindful of the nature of collective bargaining in the public sector and of the serious implications of the duty to bargain in good faith, the decision to engage in collective bargaining should not be implied from language that is unclear. It is only when a legislative enactment expressly and unambiguously announces a decision to undertake collective bargaining that a court should find that a government entity has bound itself to such a course of dealing. The language employed by the Charter Commission is not so clear and explicit that this court will interpret the phrase to mandate collective bargaining. Instead, the less stringent obligation to "meet and confer" is applicable to discussions between Sitka and recognized employee organizations.[13]

 Although we conclude that Charter section 3.05 does not require Sitka to engage in collective bargaining, it does not follow that the establishment of an employees' negotiating committee as defined by the personnel policy ordinance satisfied the Charter obligation to "recognize employee organizations." In the context of enactments concerning public employment, "employee organization" is typically defined broadly to include any organization that assists its members in improving the terms and conditions of their employment.[14] The focal point, here, is what was intended by use of the word "recognize." In other clauses of Charter section 3.05, the verb "establish" is used with regard to provisions for employment qualifications, a merit system, and a pay plan. If the Charter Com-

---

12. *See* AS 23.40.250(1).

13. A "meet and confer," or "meet and discuss," obligation imposes only the duty to meet at reasonable times and to discuss recommendations or proposals submitted by the employee organization. We have previously recognized the value of an obligation to meet and confer with recognized employee organizations. *See Kenai Peninsula Borough School Dist. v. Kenai Peninsula Educ. Ass'n,* 572 P.2d at 423.

14. For example, AS 23.40.250(4) defines "organization" to mean "a labor or employee organization of any kind in which employees participate and which exists for the primary purpose of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment and conditions of employment." *See also United Faculty of Florida v. Branson,* 350 So.2d 489, 494 (Fla.App.1977); *New York State Teachers Ass'n v. Helsby,* 57 Misc.2d 1066, 294 N.Y.S.2d 38, 41 (1968).

mission intended that the administrative code provide for employee organizations defined by the municipality, the verb "establish" would have been used here, too. Instead, the Charter Commission used the verb "recognize," which implies that Sitka will acknowledge an employee organization set up by employees. Moreover, the use of the plural suggests that the Charter Commission contemplated that several different employee organizations would be formed. Sitka's argument that it may unilaterally determine that all municipal employees must be included within a single employee organization is misplaced. Although undue fragmentation of the municipal workforce is a legitimate concern,[15] the Charter Commission plainly anticipated that employees would have at least the option of forming more than one employee organization.[16]

Our conclusion that Sitka has not satisfied its obligation to "recognize employee organizations" by establishing a bargaining committee is also supported by the principles articulated in *Kenai Peninsula Borough School District v. Kenai Peninsula Borough School District Classified Association,* 590 P.2d 437 (Alaska 1979). At issue in that case was whether the Kenai Peninsula School Board could establish a system of collective bargaining for non-certified school employees and yet limit the employees' rights to freely choose a bargaining representative and to affiliate with a national union. We found "that the right of the District's non-certificated employees to 'select representatives of their own choosing for collective bargaining,' be they from local or national organizations, 'without restraint or coercion by their employer,' is grounded firmly in the first amendment." 590 P.2d at 440, *quoting NLRB v. Jones &*

*Laughlin Steel Corp.,* 301 U.S. 1, 33, 57 S.Ct. 615, 622, 81 L.Ed. 893, 909 (1937). We therefore held that the "restrictions on affiliation and choice of bargaining representative are violative of first amendment freedoms guaranteed to the non-certificated school employees." 590 P.2d at 441. The Sitka Charter plainly contemplates the existence of employee organizations. We will not interpret the intent of the framers of the Charter in a manner that would interfere with the employees right to select a representative of their own choice.

We therefore hold that Sitka's personnel policy does not provide for "recognizing employee organizations" as required under Sitka Charter section 3.05.[17]

## IV. REMEDY

■ The superior court's order directs Sitka to recognize and negotiate with whatever agency a majority of the electrical department employees elect as their representative. Sitka argues that this remedy is inappropriate. We agree.

The Sitka Charter provides the only basis for relief in this case. Section 3.05 does not require the municipality to recognize an agent selected by the electrical department, but only requires recognition of employee organizations. The judgment should only require compliance with the mandate of the Sitka Charter. On remand, we direct the superior court to modify its final judgment in a manner that orders the Sitka Assembly to adopt within a reasonable time an ordinance that provides for recognizing employee organizations pursuant to Charter section 3.05.

---

15. *See* AS 23.40.090. We note, though, in view of our holding that Sitka need not engage in collective bargaining to comply with Charter § 3.05, the problems typically associated with the excessive fragmentation of the workforce into separate bargaining units are not as substantial in the present case as they might otherwise be.

16. We need not address whether Sitka may define by ordinance appropriate bargaining units.

17. *Sitka advances two other grounds for reversal of the superior court's decision. We are unpersuaded by either. First, Sitka argues that the IBEW's unreasonable delay in bringing this action constitutes laches. Second, Sitka argues that the IBEW waived its claim. The superior court found neither laches nor waiver. These findings are not clearly erroneous and will not be set aside here. Alaska R.Civ.P. 52(a).*

The judgment of the superior court is AFFIRMED in part, REVERSED in part, and REMANDED for modification in accordance with this opinion.

BURKE, C.J., not participating.

RABINOWITZ, Justice, dissenting.

I disagree with the court's holding that Sitka Ordinance 73–93 validly exempted Sitka from the requirements of PERA. Therefore, I would affirm the superior court's ruling that Sitka's attempted exemption from PERA was ineffective.

In my view, *State v. Petersburg,* 538 P.2d 263 (Alaska 1975), is controlling. The focus of my disagreement with the court's treatment of this issue is its conclusion that the organizational activity must occur between the effective date of PERA, September 5, 1972, and the July 10, 1973 passage of the exemption ordinance. The distinction between *Petersburg* and the instant case is that in the former the union activity took place between the effective date of PERA and the city's exemption. Here the union activity occurred prior to the effective date of PERA. In my view, this factual distinction is of no legal significance.

The principal concern of *Petersburg* was that a city might employ its opt-out option as a de facto veto of a particular labor organization. Although a claim that the political subdivision has resorted to its exemption to thwart particular employee organizations is compelling when the city or borough exempts itself immediately after the commencement of organizational activities, as was the case in *Petersburg,* the timing of those organizational activities should not be dispositive.

It is uncontroverted that Sitka was aware of the long history of past IBEW organizational attempts. More important than the lack of Union activity within the "window period" is the city's continuing fear of, and disdain for, the IBEW. Sometime after all the electrical employees signed union authorization cards (which was probably in the spring of 1972 and before the city passed its exemption ordinance in July 1973), several city leaders met with the electrical department employees. At this meeting, IBEW representation was discussed. One employee testified: "I remember Mr. Conway (an assembly man) saying that if you do get a union, we will pull back everything, start from there, you won't have anything. Those aren't verbatim, but that's the gist of what he said." The city's only objection to IBEW seems to have been that it was a powerful outside organization. The city administrator testified: "I believe it's the feeling of the assembly and the prior council there that it should be a local problem there, and wages and fringes should be tied to a local economy as to the prevailing wage and what have you. This—this is what I read into it." Thus, review of the record persuades me that there is ample evidence showing that Sitka opted out of PERA primarily because it objected to the IBEW.